SMIITH-M'CORD. DRY GOODS CO. v. JNO. B. FARWELL CO.

(Filed July 30, 1897.)

1. CHATTEL MORTGAGES—*Insolvent Debtors—Preferring Creditors.* Where an insolvent debtor makes conveyance of the whole of his property by chattel mortgage to one or more of his creditors in good faith for the security of a *bona fide* indebtedness, although in exclusion of. other creditors, the transaction lacks the essential elements of a trust for the benefit of creditors, and cannot be brought within the range of the statutes relating to voluntary assignments. The statute regulating and permitting voluntary assignments by insolvent debtors for the benefit of creditors was not intended to and does not affect or qualify the rights of such debtors to make preferences among their creditors under sec. 4, ch. 37 of the Statutes of 1893.

2. SUBSEQUENT MORTGAGES—*Estoppel.* A creditor who accepts a second mortgage, which expressly recites that it is subject to a prior mortgage, or expressly recites the existence of a prior mortgage, is estopped from attacking such prior mortgage on the ground that it was made to defraud creditors, or from asserting that such prior mortgage, in effect, was an assignment for the benefit of creditors generally.

3. DEFEASANCE—*Not Essential.* Where a chattel mortgage provides for immediate delivery of the property to an agent of the mortgagee, with power for immediate sale of the property, such possession and right of sale is not inconsistent with a defeasance clause in the mortgage, nor is a defeasance clause essential to the validity of a mortgage. If, from the nature of the instrument, standing alone, or read in the light of the surrounding circum-

stances, it appears to have been given as a security, it must be considered as a mortgage, and equity will imply the right to redeem by the payment of the debt at any time before the property is applied to the purposes of the trust.
(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

Action by John B. Farwell & Co., *et al.*, against Smith-McCord Dry Goods Company, *et al.* Judgment was rendered in favor of the plaintiffs below and the defendants appeal.

*John H. Cotteral,* for the plaintiff in error.

*Wisby & Hornor* and *John D. DeBois,* for defendants in error.

Opinion of the court by

TARSNEY, J.: This action involves a controversy between twenty-five mercantile corporations and co-partnerships over the distribution of the proceeds of a stock of goods, each and all of said corporations and co-partnerships being mortgagees named in a series of nine chattel mortgages on said stock of goods.

On November 14, 1894, John Jacobs, one of the plaintiffs in error, was engaged in the business of a retail merchant, dealing in dry goods, boots and shoes, clothing, and general merchandise at the city of Guthrie. On that day he was indebted to the other parties herein in a sum in the aggregate exceeding $20,000, of which said sum there was then due and owing to the defendant in error, John B. Farwell & Co., the sum of $1,500, and to the cross-petitioners, H. T. Simon-Gregory Dry Goods Co., $1,184; M. Rosentreter & Co., $3,833.30; I. Russack & Sons, $450; the Rosentreter Jewelry Co., $195; Kemper, Hundley & McDonald Dry Goods Co., $2,324.55; and

Stern, Lauer & Shohl Co., $1,533; that on said day he made and executed a conveyance in the ordinary form of a chattel mortgage on all said stock of goods, furniture and fixtures, to the said plaintiff in error, and to each of said cross-petitoners, they each being named therein as mortgagees, and to secure to each of them the said indebtedness due to each of said mortgagees respectively. All of said indebtedness was by the terms of said mortgage extended and made payable on the 15th day of February, 1895. The mortgage, in express terms, conveyed said property as security for the payment of such indebtedness, and that, if said indebtedness and the interest thereon was paid, as specified, the transfer of the property should be void; provided for the immediate delivery of the possession of the property mortgaged to John D. DeBois, as agent for said mortgagees, with power to said agent to sell said merchandise for cash in the usual course of trade; said agent to keep an accurate account of all such sales and the proceeds thereof to be applied, less actual and necessary expenses, to the payment of said indebtedness; provided that upon default in the payment of said indebtedness when due, or in case of attachments being levied or judgments rendered, said agent might declare the whole of said indebtedness due without notice and forthwith, sell said property in manner provided by the laws of the Territory of Oklahoma, for the sale of mortgaged property without suit; and that after satisfying the costs and expenses and the indebtedness and interest therein secured out of the proceeds of the sale of said property, said agent should return the surplus, if any, to the party of the first part.

This conveyance was duly filed for record and recorded the same day; and immediately said John D. DeBois, as agent for the mortgagees, took possession of the store, stock and fixtures and commenced selling and disposing of the same in the regular course of such business. Thereafter said Jacobs executed eight other chattel mortgages to secure the indebtedness due from him to the several plaintiffs in error herein, all of said mortgages being executed and recorded after said mortgage to Farwell & Co. and others had been executed, recorded and their agent had taken possession of the store and goods. No question of priority of mortgages is raised in this case, but the plaintiffs in error filed their cross-petition, praying that the said mortgage to said Farwell, *ct al.*, might be declared a conveyance or assignment in trust for all the creditors of said Jacobs, and that the proceeds of the sale of said stock of goods and property might be distributed *pro rata* to all the creditors of said Jacobs.

The court below found in favor of the validity of said first mortgage and that the mortgagees therein named were entitled to the proceeds of the sale of said property to be distributed *pro rata* among them in payment of the indebtedness due them respectively, and secured by said mortgage.

Jacobs, at the time of the making of this first mortgage, was insolvent and in failing circumstances; he knew that he could not continue in business, as attachments were being threatened and about to be levied, and all these creditors were threatening to levy attachments, if their respective claims were not secured by chattel mortgage. The stock of goods inventoried $7,594.64.

DeBois, the agent, received the sum of $776.14 for the goods sold by him while in his custody, and a receiver appointed by the court sold the balance for $5,100. The indebtedness secured by said first mortgage amounted to $11,644.20. Each and all of the eight subsequent mortgages were made subject to the mortgage given to Farwell & Co., *et al.*

The principal contention of counsel for plaintiffs in error in this case is based upon the authority and reasoning in *Straw v. Jenks*, (Sup. Court of Dakota Ter., 41st N. W.) that:

"When an insolvent debtor makes a general distribution of all his property and effects whether to all or only a part of his creditors, thereby abandoning his business or putting himself in such situation that it is impossible for him to continue it, he has made a voluntary assignment in effect under the assignment law, and this, whether the instrument by which the operation is effected be denominated an assignment or a mortgage. So long as the instrument or instruments employed by the debtor, whatever called, works an absolute transfer, substantially, of all the property and effects of an insolvent to another or others, with a design on his part that it shall do so, and that his connection with the business shall cease, it is an assignment under the statute."

Since the brief of counsel was filed in this cause, this question was directly before this court and passed upon; and in *Smith v. Baker*, 49th Pac. 61, we declined to follow the rule in *Straw v. Jenks* or the doctrine therein announced, and expressly held that where an insolvent debtor makes conveyance of the whole of his property by bill of sale or chattel mortgage, to one or more of his creditors in good faith, in absolute executed payment of a *bona fide* debt, or for the security of a *bona fide* indebted-

ness, although in exclusion of other creditors, the transaction is not brought within the range of the statute relating to voluntary assignments; that the statute regulating and permitting voluntary assignments by insolvent debtors for the benefit of creditors, was not intended to and does not effect or qualify the right of such debtors to make preferences among their creditors under sec. 4 of ch. 27, of our Statutes of 1893; that under the laws of this Territory an insolvent debtor has two ways in which he may dispose of his estate: first, under sec. 4, ch. 27, by conveying the same by chattel mortgage, bill of sale or other proper conveyance in payment of or to secure his debts due to one or any number of his creditors, and in these conveyances he may make preferences; and, second, if he desires to distribute his estate equally to all his creditors he may do so under the voluntary assignment law. If he elect to distribute his estate under the assignment law, such distribution is required to be for the benefit of all creditors equally and the assignment cannot create preferences in favor of any.

The conclusion reached in *Smith v. Baker* is supported by the great weight of authorities and will be adhered to by this court and must be held decisive as to this contention of the counsel for plaintiff in error.

II. Since the decision in *Smith v. Baker* counsel have filed a reply brief in which they contend that the instrument by which Jacobs sought to convey his property to Farwell, *et al.*, is not a mortgage; that it does not create a lien and security for indebtedness, but that it is a complete and absolute conveyance; that it authorized the agent, DeBois, to take possession at once and dispose of the stock immediately at retail; that the idea of a lien or

security or defeasance could not have been entertained or intended; that though such clauses were in the instrument, they were inconsistent, ineffectual and unintended, when provision was made for the absolute disposition of the property.

It might be a sufficient answer to this to say that, even if this were true—if the instrument had none of the elements of a mortgage—yet, unless it was and was intended to be a voluntary assignment for the benefit of creditors, the courts would not be justified in taking charge of the property and distributing it in a manner not contemplated or intended by the parties. It does not follow that if it is not a mortgage it must be an assignment. If a person should, in good faith, convey real estate or other property to another and the instrument of conveyance should be held void because not executed according to law, this would not justify the court in taking possession of such property and giving it to third parties. There is no law which makes every defective or insufficient instrument of conveyance, a general assignment for the benefit of creditors. To justify the court in declaring an assignment for the benefit of creditors, where none is made by the debtor in the manner provided by law, the acts of the debtor must be in violation of law and in fraud of the rights of the creditors.

The intent of the parties to a contract, unless contrary to law, must govern the courts. There is nothing in this transaction showing an intent upon the part of Jacobs to make an assignment for the benefit of his creditors. Whether the instrument is or is not defective as a mortgage, it lacks almost every element of an assignment for

the benefit of creditors. An assignment is more than an appropriation of property for the security of debts; it is an absolute appropriation of property to their payment; it does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and the equitable title to the property absolutely beyond the control of the assignor. There remains, therefore, no equity of redemption in the property and the trust which results to the assignor in the unemployed balance does not create such an equity. (Burrill on Assignments, sec. 6.) The intent of the parties that the conveyance in this case was not an absolute sale but was intended as a security, is found in the very language of the grant:

"The mortgagor, John Jacobs, sells and conveys and mortgages to the mortgagees, *as security* for the payment to each of them, the following sums of money."

There was a plain clause of defeasance in the instrument:

"Provided, however, that if said indebtedness and interest thereon be paid, as above specified, this transfer shall be void."

It is argued that this clause was unintended by the parties, being inconsistent with the immediate transfer of the possession of the property and the right to sell the same immediately in the regular course of business. We do not think so. At any moment after the execution of the mortgage, before any sales were made, the mortgagor could have released the property from the incumbrance by paying the debts mentioned, or by paying the debts at any time before the property was all disposed of, he could have released such portion as was undisposed of, by such payment. But a defeasance clause was not essential to the character of the instrument as a mortgage.

"Whatever the form of a contract may be, if it is in-tended thereby to create a security, it is an equitable mortgage; it is not even necessary that the contract should be in express terms a security; for equity will often imply this from the nature of the transaction be-tween the parties." (1 Jones, Mortg., 162.)

"The mere fact that an instrument does not contain terms of defeasance cannot be at all decisive in deter-mining the question whether it shall be considered a mortgage or not. If from the nature of the instrument standing alone or read in the light of the surrounding cir-cumstances, it appears to have been given as a security, it must be considered as a mortgage and the law will apply thereto the rules applicable to mortgages. (*Cooper v. Brock*, 41 Mich. 488.)

In *Hargadine v. Henderson*, (11th S. W. 218,) the su-preme court of Missouri says:

"Although the indebtedness was a present one, the pos-session of the property was delivered to the grantee, and no clause of defeasance appears in the instrument, for, being intended merely as security for the payment of a debt, in equity it would be held to be a deed of trust in the nature of a mortgage with the right of redemption in the mortgagor, if exercised before the property is applied to the purposes of the trust."

We find nothing in this mortgage, either in substance or form, to make it invalid as a mortgage, and, if executed in good faith, it had the effect of conveying the property to the mortgagees as security for the payment of their debts, in priority to any subsequent mortgages, and is not void, because it had the effect of a preference of the mortgagees over other creditors.

III. The plaintiffs in error in this case are not in a position to assert any invalidity in this mortgage, or that it, in effect, is an assignment for the benefit of creditors.

They are estopped therefrom. They are all mortgage creditors, claiming under mortgages which in terms recognize this mortgage as existing when the ones under which they claim were executed. A creditor who accepts a second mortgage which expressly recites that it is subject to a prior mortgage, is estopped from attacking its validity or from asserting that it was made to defraud creditors. (*Munsey Nat. Bank, et al. v. Brown*, 112 Ind. 174; *Rennick v. Bank*, 8 Ohio, 535; *Ervine v. Longworth*, 20 Ohio, 580.) Not only is there an express reference to the existence of this mortgage in the subsequent mortgages of plaintiffs in error, but the evidence shows that the attorneys, acting for plaintiffs in error, in securing their mortgages, sought and obtained the aid and assistance of the attorney for defendant in error, in procuring such mortgages, with the understanding that they were to be subject to and no wise affect the validity of the mortgage of the defendant in error.

Again, there being nothing to distinguish the *bona fides* of the parties in making any of these mortgages, the plaintiffs in error cannot be heard to say that this mortgage was fraudulent to them as creditors and therefore the transaction was an assignment for their benefit as creditors, when they themselves took and claimed under conditions identical in every respect with this.

The making of all these mortgages was practically one transaction. If one party was guilty of fraud against the rights of creditors, they all were, and the court will not attempt to determine, with any degree of nicety, the resulting effect to the rights of the respective parties engaged in a fraudlent transaction. We do not intend to question the *bona fides* of the parties in taking this mort-

gage or to intimate that the record shows it to be other than a *bona fide* transaction. We simply hold that if it were what plaintiffs in error assert it to have been, they are estopped by their conduct and participation in the transaction, from now claiming any invalidity in this mortgage.

There being no error in this record, the judgment of the court below, being clearly for the right parties, is affirmed.

Dale, C. J., having presided in the court below, and Keaton, J., having been of counsel, not sitting; McAtee J., concurring; Bierer, J., dissenting.