HOCKADAY, HARMON & ROE *et al.* v. JAMES J. DRYE.

(Filed July 30, 1898.)

1. ASSIGNMENT—*Attachment—Interpleader.* Where an insolvent debtor has made an assignment for the benefit of creditors generally, and before the expiration of the twenty days limited for filing the inventory the property is attached on act ons by certain of the creditors, and sold by the sheriff, and, after judgment in the attachment proceedings, the proceeds of the sale are in the hands of the court awaiting distribution, the general creditors of the assignor may interplead in said attachment action, asking the court to decree such proceeds a trust fund to be administered in equity, and distributed *pro rata* among all the creditors of the assignor, and for the appointment of a receiver to administer such trust.

2. SAME—*Deed—Preferences.* A deed of assignment is only invalid on account of preferences where the instrument itself is upon or contains a trust or condition of preference or priority. If the instrument contains no trust or condition of preference or priority, and be absolute, if its taking effect be not by its terms conditional, then it is

not invalid by reason of preference or priority. An absolute executed payment involves no element of trust or condition; hence, if an insolvent debtor, although in contemplation of making a general assignment for the benefit of creditors, makes payment in part or full in cash of his indebtedness due one or more of his creditors, such payment does not make the general assignment invalid as a preferential assignment

3. SAME—*Inventory—Title of Assignee.* An assignor has twenty days after the execution of an assignment in which to make and file an inventory. The making and filing of such inventory, as required by statute, are conditions subsequent, and not precedent, to the vesting of the title to the property in the assignee. An inchoate title vests in the assignee upon the execution and recording of the deed of assignment, and is made absolute by compliance with the statute in relation to making and filing inventory, bond, etc., within the time specified. During said time the assignor has not an attachable interest in the property. The assignment cannot be defeated by the levying of attachments during the twenty days given for making such inventory.

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; before J. R. Keaton, District Judge.*

*George S. Green, Asp, Shartel & Cottingham, J. M. Van Winkle, P. O. Cassidy,* and *R. E. Woods,* for plaintiffs in error.

*McConnell & Chambers, Frederick King* and *Cotteral & Hornor,* for defendants in error.

Action by Hockaday, Harmon & Roe and others against James J. Drye in attachment. Certain general creditors of defendant obtained leave to intervene, praying that a receiver take charge of the proceeds of the attached property, and distribute the same *pro rata* among all the creditors of defendant. From a decree in favor of the interveners, the attaching creditors bring error. Reversed.

Opinion of the court by

TARSNEY, J.: The trial court made findings of fact
—19

substantially as follows: That on December 12, 1896, James J. Drye, one of the defendants in error, was doing business in the town of Shawnee, dealing in general merchandise, and possessed of a stock of goods, the proceeds from the sale of which are in controversy in this action. That at said date said Drye was insolvent, and made a deed of assignment to one Robert N. White, as assignee, for the benefit of all his creditors. Said assignment was made and executed between the hours of 4 and 5 o'clock P. M. on said day, was duly executed and acknowledged, and was filed for record in the office of the register of deeds of Pottawatomie county at 5 o'clock and 33 minutes P. M. of that day. That previous to the execution of the assignment Drye was indebted to one Annie L. Brown in the sum of about $4,000. That said indebtedness was an actual and subsisting indebtedness. About one hour and a half before the execution of said assignment, Drye paid to said Annie L. Brown, upon account of said indebtedness, the sum of $3,700. That at the time of making said payment Drye had determined to execute the assignment for the benefit of all his creditors. That said fact was then known to said Annie L. Brown. The payment to said Annie L. Brown was for a *bona fide* indebtedness, made in good faith, and intended as part satisfaction of said indebtedness. That on said day said Robert N. White, assignee, accepted said trust, and took possession of said stock of goods. That immediately after the execution of said assignment and the taking possession of the property by the assignee thereunder, the plaintiffs in error, to whom the said Drye was indebted in various sums, respectively, commenced actions thereon, and sued out writs of attachment against the property of said Drye, and the sheriff, under said

writs, dispossessed the assignee, and took possession of said property. That the attachment suits of plaintiffs in error the bank of Shawnee, Burnham, Hanna, Munger & Co., and Hockaday, Harmon & Roe were all commenced on December 12, 1896, after the execution and recording of said assignment, and after the assignee had taken possession of the property assigned, and the writs therein were levied on the same day, except that in the case of Hockaday, Harmon & Roe, which was levied on December 14th. That the attachment proceedings of the other plaintiffs in error, Tootle, Wheeler, and Motter, were instituted on the 14th day of December, 1896, and the attachment writ therein was levied on the same day. That on said 12th day of December said Dyre was indebted to the defendants in error in various sums respectively, and on said 14th day of December the defendants in error Richardson, Roberts, Brynes Dry-Goods company commenced attachment proceedings, and said property was also levied upon under such proceedings. That under said writs the property remained in the hands of the sheriff until December 15, 1896, when, upon application of the plaintiffs in the attachment proceedings, a receiver was appointed, who qualified on December 29th. That on December 30, 1896, each of the plaintiffs in error obtained judgment in their respective attachment suits against the defendant Drye, and the attachments therein were sustained. That prior thereto the property seized under the several writs of attachment was, by the sheriff, by order of court, sold, and the proceeds thereof, some $6,500, were turned over to the receiver. On December 31st defendants in error Richardson, Roberts, Byrnes Dry-Goods company dismissed their attachment proceedings, and on January 7, 1897, leave of court therefor be-

ing had, filed in the attachment case of Hockaday, Harmon & Roe against James J. Drye, (that being the case in which the receiver was appointed,) their interplea. Afterwards defendants in error Friedman Bros & Schafer, Wurtheimer-Swartz Shoe Co., Equitable Manufacturing company, and Charles Mayer & Co., also general creditors of said Drye, filed therein, with leave of court, their interpleas; all of said interpleas alleging an indebtedness due from Drye to the interpleaders on the 12th of December, 1896, the insolvency of Drye, the making by him of the assignment for the benefit of creditors, and the previous payment by him to Annie L. Brown of the said sum of $3,700, and asking that a receiver take charge of the proceeds of the goods sold under attachment, and distribute the same to the creditors of said Drye *pro rata.* In their said interpleas they alleged the validity of said assignment. They also alleged that the said payment to Anna L. Brown was made in contemplation of a general assignment, and constituted a preference therein; and that by reason thereof the property assigned became a trust fund to be administered by the court with the aid of a receiver.

On motion filed, the court required the interpleaders Richardson, Roberts, Brynes Dry-Goods Company and Friedman Bros & Schafer to elect upon which cause of action stated in their respective interpleas they would rely, viz. whether they would rely upon the validity of the general assignment, or upon the allegation that said assignment failed by reason of its being preferential; and said interpleaders elected to rely upon said latter cause of action. No motion to require an election was filed in the matters of the interpleas of defendants in error, Wurtheimer-Swartz Shoe company, Equitable

Manufacturing company, and Charles Mayer & Co.; and each of said latter interpleas were identically the same in setting up the validity of the assignment and the alleged preferential payment as causes of action with the other interpleas against which said motions to elect were filed and sustained.

The trial court made a special finding of fact that said James J. Drye never at any time made, executed, and filed in the office of the register of deeds of Pottawatomie county any inventory of his property, nor any schedule of his creditors, as required by law. These several interpleas were tried before the court as one cause, and the court, after finding the facts as above stated, found, as a conclusion of law, that the transaction by which said deed of assignment was executed was upon and contained a trust or condition by which one of the creditors—Annie L. Brown—was to receive a preference or priority over the other creditors; that said preference was a part of said assignment, and both constituted one transaction; that the said assignment, upon its execution and filing for record, vested a trust fund in the court of all the assigned property to be administered in equity; that the rights of all the general creditors attached thereto; that said property was not subject to attachment at the date of the levy of the attachments; that the levies of such attachments should be set aside, and that the court should administer the funds arising from the sale of the attached property as a trust fund in equity, for the equal benefit of all the creditors, in proportion to the amount of their respective demands. The plaintiffs in error duly excepted to the findings of fact made by the court, and also to the conclusion of law, and bring the case here for review.

The first contention of plaintiffs in error which we

shall notice is that the interpleas were erroneously entertained in the attachment suit of Hockaday, Harmon & Roe, the precise contention being (1) that such interpleas were filed too late, not having been filed until after the rendition of the final judgment in the main case; (2) because the nature of their title was not sufficient to justify the filing of an interplea, and the relief they sought could only be accomplished by an independent suit; and (3) the interveners had no capacity to sue in resp.ct to the property in controversy.

Section 45a, Code Civil Procedure, Statutes 1893, provides: "Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit made by himself, agent, or attorney, and issues may be made upon such interpleader, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay."

And section 41 of said Code provides: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

And section 35 of said Code provides: "All persons having an interest in the subject of the action and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

The interveners, being general creditors of the defendant in the attachment proceedings, and claiming that a valid assignment had been made of the property attached for their benefit, or claiming that the defendant, in making an assignment, had made illegal preferences, which

had the effect to make the assigned property a trust fund to be administered by the court in equity for the benefit of all creditors, showed a legal interest in the proceeds of the property held by the court in the attachment proceedings. It is true that they had no legal title to the property attached, or to its proceeds, but they had an equitable right to have the proceeds of the property sold distributed to themselves and the other creditors of the defendant *pro rata,* according to the amount of their indebtedness. There was no other way by which they might proceed to protect their rights; at least no other adequate remedy existed for them. They were interested in the fund then in the custody of the court to the extent of their *pro rata* share thereof, with all other creditors, if the assignment was valid, or if, by reason of its containing a preference not authorized by law, it was the duty of the court to cause it to be distributed *pro rata* among creditors. To secure such interest, it was necessary that application should be made to the court to appoint a trustee to administer the trust. This gave them the right to institute proceedings for that purpose. If the provisions of the statute above quoted were not sufficient to authorize such intervention, then the right existed as a rule of equity. In equity, although no one is entitled to be made or to become a party to the suit who has not an interest in its object, it is the usual practice to admit strangers to the litigation who claim an interest in the subject-matter to intervene, and assert their titles on their own behalf. (*French v. Gapen,* 105 U. S. 509; *Krippendorf v. Hyde,* 110 U. S. 276, 4 Sup. Ct. 27.)

Mr. Daniell, in his work on Chancery Practice (chapter 26, p. 1057, sec. 7,) says: "When any person claims to be entitled to an estate or other property sequestered,

whether by mortgage, or judgment, lease, or otherwise, or has a title paramount to the sequestration, he should apply to the court to direct an inquiry whether the applicant has any, and what, interest in the property sequestered." This inquiry is called an "examination *pro inter esse suo*," and an order for such an examination may be obtained by a party interested as well where the property consists of goods and chattels or personalty as where it is real estate. Thus, in *Martin v. Willis*, 1 Fowl. Exch. Prac. 160, a person claiming title to goods seized under a sequestration obtained an order for an examination *pro inter esse suo*, and in the meantime that the goods might be restored to him on his giving security. Mr. Justice Matthews, delivering the opinion of the court in *Krippendorf v. Hyde, supra*, says:

"In actions at law, where goods have been taken in execution after judgment, or upon attachment before, a proceeding in the nature of an interpleader might be appropriately ordered by the court, such as was given in the English practice to the officer by the statute of 1 & 2 Wm. IV. c. 58; 2 Lush. Prac., by Dixon, 777, and in that the respective rights of the claimants to the property could generally be tried as in an action at law by a jury, upon a formal issue formed for that purpose, or with the consent of the parties by the court; or, if the claim was such as that it could be determined only upon principles of equity as administered in courts of that general jurisdiction, it would be proper to provide relief upon a bill of that nature, filed for that purpose."

Where a person has an interest in a fund which is in the custody or under the control of the court, and he desires to secure its proper administration and distribution, he may intervene for that purpose. (*Ex parte Printup*, 87 Ala. 148, 6 South. 418; *Carlin v. Jones*, 55 Ala. 630.)

We entertain no doubt that the interpleaders, upon the facts stated in their petitions, claiming, as general creditors, an interest in the fund, had the capacity to intervene; and, if there was any doubt as to their legal right to intervene under the provisions of the statute, there can be no such doubt under the principles and rules of practice governing equitable proceedings. Nor is there any merit in the contention that the intervention was too late, the petition not having been filed until after judgment was rendered in the main cause. The authorities to which our attention has been called as supporting this contention are based upon statutes where the distinction between legal and equitable proceedings, in relation to form, are still preserved, or upon statutes expressly providing that the petition for intervention must be filed before trial or judgment in the main action. Our statute provides that any person in whom the right to interplead exists may interplead in the cause without putting any limitation thereon as to time, or specification as to the stage of the proceedings in the cause, beyond which he may not interplead. The rendition of judgment is not always the end of the proceedings in the cause. Although judgment had been rendered in the attachment suit from which this proceeding originated, the cause was still open; the funds derived from the attached property were still in the hands of the court for distribution; the cause was pending for that purpose, and, for all the objects of this proceeding, it was yet open. We must hold that there was no error in the action of the court below in permitting defendants in error to intervene when they did, and that the court had jurisdiction of the subject-matter presented by the interpleaders.

II. Upon the facts found by the trial court, we are

of the opinion that its conclusion of law thereon cannot be upheld. The fact that contemporaneously with the making of a general assignment for the benefit of creditors an insolvent debtor makes a cash payment in full of the debt to a particular creditor does not make the assignment invalid, nor cause the property of the insolvent to become a trust fund to be administered in equity. The court below found, as matter of law, that the deed of assignment was upon and contained a trust or condition by which one creditor was to receive a preference or priority over the other creditors; that said preference was a part of said assignment. This conclusion was based upon the fact that immediately prior to making the assignment the assignor paid in cash the sum of $3,-700 in payment of *bona fide* indebtedness due Annie L. Brown, and that at the time of making such payment he had determined to execute the assignment for the benefit of all his creditors. The facts did not warrant the conclusion. Such conclusion would seem to be based upon the theory that the law prohibits insolvent debtors from making preferences among their creditors; that such insolvent debtor is prohibited by law from using the whole, or any portion, of his property in the payment of one or any number of his creditors. This is not the law. At the common law a debtor in failing circumstances might use any and all his property to pay one or more of his creditors in preference to others. There was no rule of the common law which limited or controlled the right of an insolvent debtor in the distribution of his assets, provided they were applied in discharge of his *bona fide* debts. Such preferences are expressly authorized by the statutes of this Territory.

Section 4, ch. 27, Statutes 1893, provides that: "A

debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another."

And section 1 of an act entitled "Preference of Creditors," approved March 8, 1895, (Laws 1895, p. 106,) provides: "That any person in this Territory indebted to other persons shall have a right to prefer one or more of such creditors in good faith, to secure a valid debt, which preference may be manifested by mortgages, either real or chattel, or by the transfer of personal property or real estate, and if received by the creditor in good faith, such conveyance or mortgage shall be valid in the hands of the mortgagee, and constitute a preference to the extent thereof, subject to the laws relating to the filing and recording of mortgages." These provisions in no wise conflict with chapter 5 of the Statutes of 1893, relating to assignments. That statute does not take away the right to make such preferences, but simply provides that no such preference shall be expressed in the instrument or deed of assignment authorized by that statute.

In *Smith v. Baker*, 5 Okl. 326, 49 Pac. 61, and in *Smith-McCord Dry-Goods Co. v. John B. Farwell Co.*, 6 Okl. 318, 50 Pac. 149, construing these various statutes, this court held that the statute, (chapter 5, Laws 1893,) relating to voluntary assignments was not intended to, and does not affect or qualify the right of insolvent debtors to make preferences among their creditors, except that no such preference could be contained in a deed of assignment under that statute. Section 1 of said chapter 5 reads: "An insolvent debtor may, in good faith, execute an assignment of property to one or more assignees, in trust towards the satisfaction of his creditors, in conformity

to the provisions of this title; subject, however, to the
provisions of this Code, relative to trusts and fraudulent
transfers, and to the restrictions imposed by law upon
assignments by special partnerships, by incorporations,
or by other specific classes of persons; provided, however,
that such assignment shall not be valid if it be upon, or
contain any trust or condition, by which any creditor is
to receive a preference or priority over any other creditor;
but in such case, the property of the insolvent shall be-
come a trust fund to be administered in equity, in the dis-
trict court, and shall inure to the benefit of all the credit-
ors in proportion to their respective claims or demands."
There is nothing ambiguous in the language of this sec-
tion, nor anything conflicting between its provisions and
the provisions of the other statute just quoted.    It would
seem that there should be no difficulty in determining
the intent and purpose of the legislature in these sev-
eral enactments.    The only limitation anywhere upon
the right of making preferences among creditors is that
contained in the proviso to said section 1. ch. 5.    A fair
analysis of the section makes it apparent that it was the
intention of the legislature to permit insolvent debtors
to make assignments of their property, and have the pro-
ceeds distributed among all their creditors *pro rata* ac-
cording to the amount of indebtedness due each creditor.
Such assignment must be in writing, and the property
must be thereby conveyed to one or more assignees, in
trust, for the benefit of such creditors.    The instrument
is only to be invalid if it be upon or contain any trust
or condition by which any creditor is to receive a prefer-
ence or priority over any other creditor.    The invalidity
is determined by the instrument being upon or contain-
ing a trust or condition of preference or priority.    if the

instrument itself contains no trust, or condition of preference or priority, then it is valid, unless it be made upon trust or condition of preference or priority. What is meant by being upon any trust or condition? We think it means a conditional assignment; one not absolute; one that by its terms provides that it shall not be of force or effect, except upon a condition or the execution of some other trust by which one or more creditors are to receive a preference or priority over others. In others words, the statute means that, if the assignment is to be effective only upon the condition of some creditor obtaining a preference outside of the trust created, or if the instrument, by the trust created, provides for a preference or priority, then it shall not be valid. The property passes, however, by operation of law, from the assignor, and becomes a trust fund to be administered by the court in equity for the benefit of all the creditors. To determine whether the instrument is invalid because of preferences, we can look only to its terms. The payment of money, or the transfer of property by a debtor to a creditor in satisfaction of a debt, is not within the terms of the statute regarding the creation of preference. The creditor must be preferred in the execution of a trust and by a trustee. Something must be conveyed to a trustee in trust for the creditor, and reach the creditor through the trustee, in a manner giving to him a preference or priority over others. If the legislature had meant anything other than this, they would not have enacted section 4 of chapter 27, nor the act of March 8, 1895, and they would have provided that such assignment should not be valid if the assignor, after becoming insolvent, had paid any of his debts in full, or had transferred any of his assets to creditors in payment of their claims.

We are aware of the fact that there are a line of decisions holding that when an insolvent debtor makes a general distribution of all of his property, and effects, whether to all or only a part of his creditors, by a number of chattel mortgages, contemporaneously executed, and places the property in the hands of a trustee to be disposed of for the benefit of the mortgagees, thereby abandoning his business, or putting himself in such situation that it is impossible for him to continue it, he has made a voluntary assignment, in effect, under the assignment law; and if, by such conveyances, preferences are created, the assignment will fail, and a court of equity will declare a trust in favor of all the creditors, and distribute the assets *pro rata* among all the creditors. But these decisions do not hold that a preference can be created, except by written conveyance, in trust for the benefit of the party preferred. They treat all the mortgages, when they find that they were executed practically simultaneously, as one instrument, conveying to the party named, as agent for the mortgagee, in trust for the creditors; and, therefore, if preference exists, they find such preference from the face of the instrument creating the trust. If the contention of the defendants in error were to prevail, an assignment could not be made, which would be valid, to authorize the assignee named to administer the trust under the statute of assignments, for no bank or commercial concern ever made an assignment that did not pay some of their creditors in full, when they were in an insolvent condition, and when they were in contemplation of making an assignment for the benefit of the creditors generally. Absolute executed payment involves no element of trust or condition; hence it is not within the terms of the statute. The prefer-

ences prohibited involve the elements of trust or condition.   The conclusion of law upon which the trial court based its judgment was clearly erroneous upon the facts of this case.

III.   The case was tried upon an incorrect theory.   The plaintiffs in error contended that while it was not a preferential assignment, while payment of the debt of $3,700 did not make it invalid as a preferential assignment, yet it was not a valid assignment at the time their attachments were levied; that it was void *ab initio*, because of the fact that the assignor had filed no inventory, as provided by sections 8, 9, and 10 of the assignment law. This theory of the invalidity of the assignment seems to have been conceded by a portion of the interpleaders, and adopted by the court.   As this case must be remanded for a new trial, and as upon such new trial this question will again be presented, (it having been fully discussed in the briefs of counsel, although not properly in the record, there being no cross-assignments of error,) we will not consider it here.

Section 8 of the assignment law provides that within twenty days after an assignment is made for the benefit of creditors the assignor must make and file, in the manner prescribed in section 10, a full and true inventory, showing (1) all the creditors of the assignor; (2) the place of resident of each creditor, if known to the assignor, or, if not known, that fact must be stated; (3) the sum owing to each creditor, and the nature of each debt or liability, whether arising on written security, account, or otherwise; (4) the true consideration of the liability in each case, and the place where it arose; (5) every existing judgment, mortgage, or other security for the payment of any debt or liability of the assignor; (6) all prop-

erty of the assignor at the date of the assignment which is exempt by law from execution; and (7) all the assignor's property at the date of the assignment, both real and personal, of every kind, not so exempt, and the incumbrances existing thereon, and all vouchers and securities relating thereto, and the value of such property, according to the best knowledge of the assignor. Section 9 provides that an affidavit must be made by every person executing an assignment for the benefit of creditors, to be annexed to and filed with the inventory, to the effect that the same is in all respects just and true; and section 10 provides that such assignment must be recorded, and the inventory filed with the register of deeds; and section 12 provides as follows: "An assignment for the benefit of creditors is void against creditors of the assignor, and against purchasers and incumbrancers in good faith, and for value, if the assignment is not recorded, and the inventory required by section 8 filed, pursuant to section10, within twenty days after the date of the assignment."

Counsel for plaintiffs in error contend that the inventory is a part of the deed of assignment, that it is one of the essentials of the execution of the deed itself, and, until the inventory is executed and filed, no assignment has, in fact, been made; that the failure upon the part of the assignor to file an inventory made it absolutely void. The statute gives the assignor twenty days in which to make and file the inventory. The attachments run in this case were not levied after the expiration of twenty days from the making of the assignment. Some of them were levied almost within twenty minutes of the time the assignment was executed, and all of them were levied within two days of such execution. The question

is, did the assignor, at the time these attachments were run, have an attachable interest in the property, and can the levy of an attachment destroy the right of the assignor, by filing the inventory at any time within the twenty days provided, make effective the assignment, and preserve the property for distribution among his creditors generally? Or to state it otherwise, does the title to the property pass through and vest in the assignee on the execution and delivery of the deed of assignment, or does it remain in the maker of the deed until he makes and files the inventory, as provided by law, provided it be made and filed within the time limited therefor?

In *Juliand v. Rathbone*, 39 N. Y. 369, it was held that the making and filing of the schedule was a necessary part of a valid assignment, and a prerequisite to vesting an absolute title to the property in the assignee; that, in view of the fact that time for the preparation of this schedule might be required, twenty days was given for this purpose after the delivery of the assignment; that in the meantime an inchoate title vested in the assignee, good against creditors, provided it was thereafter perfected by a compliance with the sections of the statute in relation to the making and filing of such schedule; that upon such failure to so comply the assignment will be adjudged void; that the assignee, before the making and filing of the schedule, does not acquire title to the property absolutely. An absolute title includes the power to sell and dispose of it.

The statutes of Wisconsin, (section 1697, Revised Statutes,) require the inventory and list to be filed within ten days after the execution of the assignment, and provide, "And a failure to make and file such inventory

and list shall render such assignment void." In *Farewell v. Gundry*, 52 Wis. 269, 9 N. W. 111, the supreme court of that state held that said section creates conditions subsequent which did not exist before the section was enacted, to-wit, the filing of the inventory and list within a specified time; that a failure to file either of these may defeat the title of the assignee; that a breach of either of these conditions may work a forfeiture of title, and thus defeat the trust created by the assignment, In *Haben v. Harshaw*, (Wis.) 5 N. W. 872, there appeared to have been two assignments in one instrument—one of the assignor's property held under a partnership name, and one of her property held in her individual name—and there was no inventory made or filed of her individual property under the second assignment. The same court, after quoting section 1697, *supra*, held that the construction which should be given to said section was that the statute is imperative; that a correct inventory of the assets and list of creditors must be made and filed within ten days, otherwise the title of the assignee under the assignment will be devested. In *Mather v. McMillan*, 19 N. W. 442, the same court, after citing *Haben v. Harshaw*, *supra*, with approval, say: "The effect of this last conclusion is that at any time after such ten days, and no such inventory has been filed within such ten days, the property would be liable to attachment."

In *Clayton v. Johnson*, 36 Ark. 406, it was held that "the filing of the schedule and giving the bond by the assignee, as required by the statute, are conditions subsequent, and not precedent, to the vesting of the title to the property in him. It vests in him upon the execution and delivery of the deed to the assignor and cannot be

defeated by an execution against the assignor coming to the hands of an officer after the delivery of the deed and before the filing of the schedule and bond in the probate court; and, if the officer levy such execution on the goods, the assignee may, after filing the schedule and bond, maintain replevin against him for the goods."

A statute of Michigan, (Pub. Laws 1889, p. 318, sec. 1,) provides: "That all assignments, commonly called common law assignments for the benefit of creditors, shall be void unless the same shall be without preferences between such creditors, and shall be of all the property of the assignor not exempt from execution, and unless such instrument of assignment or a duplicate thereof, an inventory of assigned property, a list of the creditors of the assignor, and a bond for the faithful performance of the trust by the assignee shall be filed in the office of the clerk of the circuit court of the county where such assignor resides, or, if he is not a resident of this state, then, of the county where the assignee resides, within ten days after the making thereof. Such assignment shall convey to the assignee all property of the assignor not exempt from execution, and all rights legal and equitable of said assignor; provided, that no such assignment shall be effectual to convey the title to the property of the assignor to the assignee, until such bond shall be executed, filed with, and approved by said clerk."

In *Fuller v. Hasbrouck*, 8 N. W. 697, in an opinion by Judge Cooley, the supreme court of that state says: "There is undoubtedly some difficulty in harmonizing all the provisions of this statute. The statute declares the assignment 'void' if the bond is not filed; but this word is frequently used in the sense of 'voidable.' (*Beecher v.*

*Mill Co.,* 4 5Mich. 103, 7 N. W. 695,) and it must have that construction here if it shall be necessary to give other provisions of the statute effect. The assignment as an effective trust in the hands of the assignee undoubtedly becomes inoperative, and will remain so, and in a certain sense void, unless creditors take steps to save the trust, and have it enforced in equity." In that case, upon the execution of the assignment, the assignee accepted the trust, took possession of, and invoiced the property. He failed, however, to give the bond required by the statute. Immediately on the expiration of the ten days several of the creditors sued out attachments, which they caused to be levied upon the property, and the secured creditors also took possession under their several mortgages. Thereupon certain of the unsecured creditors filed their bill in equity, setting forth all the facts, and praying that a receiver be appointed by the court, and the trust under the assignment executed by him. The attaching and mortgage creditors, defendants, demurred to the bill, and the demurrer was sustained, and the bill dismissed. This was done on the supposition that the failure of the assignee to give a bond within ten days rendered the asignment wholly nugatory and void for all purposes, and that there was, consequently, no trust created, and nothing to preclude the creditors making levies. The supreme court reversed the judgment, holding that the failure of the assignee to give the bond within the ten days did not render the assignment wholly nugatory and void for all purposes; that creditors were not authorized to make levies; that there was a trust created by the assignment; that the failure to file such bond created the contingency which entitled the court to inter-

fere with its receiver upon the intervention of the creditors and to administer the trust in equity.

In *Farmer v. Cobban,* 29 N. W. 14, the supreme court of Dakota Territory says: "What was the legal interest or title vested in the assignee after the delivery of the assignment, and before the expiration of twenty days? [The assignor there, as here, had twenty days in which to file the inventory.] Clearly, an inchoate title vested in the assignee, good against creditors, provided it was thereafter perfected by a compliance with the provisions of the law above referred to; but, in case of failure to comply with all the essential provisions thereof, the assignment must be adjudged void."

*Landauer v. Conklin,* 3 S. D. 462, 54 N. W. 322, is the only case cited, or which we have been able to find, where an attachment was sustained when levied after the making of the assignment, and before the expiration of the time given by the statute to the assignor in which to file the inventory. The authorities are in conflict to some extent as to whether the filing of an inventory, or the giving of bond within the time limited therefor, is mandatory, and failure of compliance therewith renders the assignment absolutely void at the expiration of said time, or whether such provisions are directory, and a failure to comply therewith renders the assignment voidable, and to be enforced in a court of equity, with the aid of a receiver to execute the trust. We are of the opinion that there are substantial reasons in support of the proposition that a failure to comply with such requirements within the time limited therefor renders the assignment absolutely void; but we are clearly of the opinion that until such time has expired the property is not subject to seizure by attachments against the assign-

or, and that the title vested in the assignee is inchoate, with the right in the assignor to make it absolute by compliance with the terms of the statute. Any other construction would render the entire assignment law practically nugatory, and give no assurance that an insolvent debtor might convey his property for the benefit of his creditors generally. In fact, under the contention of plaintiffs in error, unless one contemplating an assignment should prepare his inventory at the same time he executed the assignment, and file the same with the register simultaneously with the filing of the assignment, it will be absolutely impossible to convey by general assignment, without the assent of every creditor. The law recognizes the fact that such inventory is to be made and filed after the assignment is executed. In some states this inventory is made by the assignee instead of the assignor, and he could not make it before the execution of the assignment, which gave him authority. The statute, therefore, gives twenty days in which this inventory may be made and filed. This is for the benefit of the assignor, to enable him to perfect that which the law regards as a beneficial purpose, viz. the distribution of his property equitably among all his creditors. If attachments may be levied during that period, then the provisions as to time for filing the inventory are of no effect. They are worse than useless. The filing of an assignment would be notice to creditors that would invite attachments before such inventory could be prepared. This certainly was never intended by the legislature. Take the case at bar, where the property was seized under attachments within a few moments after the assignment was executed. It would be monstrous to hold that these attaching plaintiffs could maintain

their attachments on the ground that the assignment was void because of a neglect or failure on the part of the assignor to perfect the assignment by filing the inventory required, when their own action had caused such failure by depriving the assignor of the power of making the assignment. It would be reversing the doctrine yet generally respected that "no man shall take advantage of his own wrong."

We hold that plaintiffs in error could not lawfully attach the property in question at the time their attachments were levied on the ground that the assignment was void because of a failure on the part of the assignor to file the inventory. Nor did they attach on this ground. The grounds of their attachments were that the defendant had fraudulently assigned and disposed of his property with intent to cheat, injure, and defraud his creditors. In the same breath they say he has disposed of his property with intent to defraud them, and that he has not disposed of it at all.

The interveners stated a good cause of action when they alleged a valid assignment, and that the property was taken under these attachments before the time for perfecting such assignment. The plaintiffs in error had the right to show that such assignment was invalid *ab initio* by showing that it was made fraudulently and without intent to perfect the same, for the purpose of hindering or delaying creditors; or that the assignor did not include therein all his property; or any other cause that might exist for rendering the same fraudulent and void. This they did not do, but chose to rely upon the untenable position that the failure to file the inventory renders the assignment void *ab initio*.

As we have said, this case was tried upon a wrong

theory. As the counsel upon both sides, as well as the court, were responsible for this, and it being a proceeding in equity, where the rights of the parties should be determined upon all the facts fully and properly presented, an opportunity will undoubtedly be afforded the parties by the court below to so amend the pleadings as to properly present the issue arising upon the facts. For the reasons stated, the judgment is reversed, and cause remanded for a new trial.

All of the Justices concurring.