THE RANNEY-ALTON MERCANTILE COMPANY v. T. C. HANES AND J. W. JOHNSTON.

(Filed Feb. 7, 1900.)

1. APPEAL TO SUPREME COURT—*Necessary Parties—Summons.* Where an appeal is taken from a decision of the district court, and it appears that the parties in whose favor judgment was rendered were in fact partners, and the property in controversy in the case in the district court was partnership property, the service of the summons in error upon one partner perfects the appeal, notwithstanding the pleadings may be entitled in the individual names of the partners. And in case of the death of one of said partners pending the appeal to this court, it will not be necessary to make his personal representatives parties to the action.

2. ACTION IN ATTACHMENT—*Form of Verdict.* Where in an action of attachment parties interplead, claiming the right to the property levied upon by writ of attachment, and where the property has been sold and converted into money by the order of the court, and the money brought into court, then a verdict of the jury in the alternative, for the possession of the property, or the value thereof, in case the property cannot be had, is not necessary. A money judgment in such case is sufficient.

Ranney-Alton Co. v. Hanes *et al.*

3. VERDICT—*Not Sustained By Weight of the Evidence.* Where, on an inspection of the record, it is apparent to the court that the evidence does not reasonably sustain the verdict of the jury, this court will set such verdict aside.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before James R. Keaton, District Judge.*

*R. N. McConnell* and *R. G. Hays,* for plaintiff in error.

*T. G. Chambers* and *Howard & Kearful,* for defendants in error.

### STATEMENT OF THE CASE.

On the 1st day of October, 1895, the Hanes Grocery company was indebted to the plaintiff in error in the sum of $1,621.23 upon an account for merchandise sold by the plaintiff in error to the said Hanes Grocery company, between the 18th day of June, 1895, and the 1st day of October, 1895, inclusive of said days.

On said 1st day of October, 1895, the plaintiff in error commenced their action in the district court of Oklahoma county, Oklahoma Territory, against the said Hanes Grocery company, to recover said amount, in which petition the defendant was named as the Hanes Grocery company, composed of R. L. Hanes, *et al.,* which petition is found on page 6 of the record. At the same time plaintiffs filed their affidavit for attachment, together with their bond for attachment and costs, and order of attachment to issue against the property of the said Hanes Grocery company, and placed the same in the hands of the sheriff of Oklahoma county for service. And on the same day,

said order of attachment was levied upon the stock of goods claimed by the plaintiff in error as belonging to the said Hanes Grocery company.

On October 4, 1895, T C. Hanes and J. W. Johnston, defendants in error herein, served upon the attorneys for plaintiff in error a notice that they would interplead in said action and claim the goods taken on said order of attachment, and on the same day, October 4, 1895, the said T. C. Hanes and J. W. Johnston filed in said court their interplea under section 3918, of the Statutes of Oklahoma, of 1893, claiming said property attached in said action, and asking judgment that they be declared the owners of said property and entitled to the immediate possession thereof, and in default of a return thereof they have judgment for the sum of $1,500, the alleged value of said property, and for costs, which interplea is found on pages 28, 29 and 30 of the record.

Afterwards, and on the 19th day of October, 1895, on the application' of plaintiff in error, an *alias* order of attachment was issued in said case, and placed in the hands of the sheriff of said county for service, and on the same day the said *alias* order of attachment was levied upon the books, accounts and notes claimed to belong to the said Hanes Grocery company.

On the 23d day of October, 1895, plaintiff in error filed its answer to the interples of T. C. Hanes and J. W. Johnston, which is found on page 38 of the record. And afterwards on the ———— day of ————, 1895, the said plaintiff in error filed its application for an order to sell the goods attached in said action; and the said interpleaders, on the 25 day of November, filed their objections

thereto, and on the 6th day of January, 1896, the court made an order for the sale of all the property taken on the order of attachment, which is found on pages 52 and 53 of the record, ordering said goods to be sold for cash, and the proceeds to be paid into court to await the action of the court. And said goods were sold in pursuance of said order, to the Ranney-Alton Mercantile company for the sum of $420, on the 21st day of January, 1896, and the money paid into court.

On the 7th day of November, 1895, the Hanes Grocery company being in default for want of answer, the attachment in said action was sustained, and a judgment was rendered in favor of plaintiff in error and against the said Hanes Grocery company, for the sum of $1,621.23, and cost of suit. The order sustaining said attachment and entering said judgment is found on pages 61 and 62 of the record.

On the 11th day of November, 1895, the defendants in error filed a supplemental interplea, which is found on pages 64, 65, 66, and 67 of the record, in which supplemental interplea they claimed the ownership of the notes and accounts taken on the *alias* order of attachment, and alleged the value thereof to be $1,500, and asked judgment for a return of said notes and accounts, or their value in case the same cannot be returned.

And afterwards, and on November 2, 1896, by leave of court, the plaintiff in error filed supplemental answer to the interplea, and supplemental interplea of said defendants in error, in which they deny generally all the allegations of said interplea and supplemental interplea, and further allege that T. C. Hanes was a member of said

firm of Hanes Grocery company, and a partner with
R. L Hanes, when the said Hanes Grocery company pur-
chased the goods of plaintiff in error, and was so a part-
ner at the time that the said defendants in error pre-
tended to purchase sa'd stock of goods, notes and ac-
counts from the said Hanes Grocery company, also all g
ing that said pretended sale was made for the purpose
and with the intent, on the part of R. L. Hanes and T. C.
Hanes and J. W. Johnston, to defeat, hinder, delay and
defraud the creditors of the said Hanes Grocery com-
pany, which amended and supplemental answer is
found on pages 74, 75, 76, 77 and 78 of the record.

On January 2, 1897, the interpleaders filed their reply
to said amended and supplemental answer, which is
found on page 81 of the record, in which they deny gen-
erally all the alegations in the amended and supple-
mental answer.

And afterwards, and on the 2d day of April, 1897, said
cause came on to be heard on the issues joined in said
interplea, answer thereto, and reply to said answer, be-
fore a jury.

Opinion of the court by

IRWIN, J.:   In this case, the defendants in error,
being the interpleaders in the district court, filed a mo-
tion to dismiss this appeal, for the reason that said
petition and said cause were filed in this court after the
death of T. C. Hanes, one of the defendants in error, and
and that there has been no service of summons in error
herein; the summons in error being served on the de-
fendant in error, Johnston, only.   If the interpleader in

this case had been filed, and the case conducted in the district court by the interpleaders, Joh ston and Hanes, in their individual capacity, this objection would be well taken, and the cause would necessarily have to be dismissed, but an inspection of the record will show that while the petition in interpleader is entitled in the individual names of the interpleaders, the body and context of the instrument will show that it was really and in fact filed by and on behalf of the partnership of Hanes & Johnston, and that the recovery of the property was claimed by the partnership of Hanes & Johnston; and, by our statute, section 3538, Laws of 1893, und r the title of "Partnership," provision is made that on the death of a partner, the surviving partner succeeds to all the partnership property, whether real or personal, in trust, for the purpose of liquidation, and section 1386, of the statute, provides that the surviving partner shall settle all partnership business. These sections of our statute are identical with sections of the California and Nevada statutes, as well as the statutes of several other states, and have frequently been construed by the supreme courts of other states, and the holding has universally been that the surviving partner is the proper party to sue in all cases touching the unsettled affairs of the partnership. (*Berson v. Ewing et al.* 23 Pac. [Cal.] 1112; *Reese v. Kinkead*, 30 Pac. [Nev.] 1087; *Friermuth v. Friermuth* 46 Cal. 44; *Matney v. Gregg Bros. Grain Co.* 19 Mo. app. 107.)

In this case the court says: "On the death of a partner, a cause of action in a suit by the firm on a contract, survives to the surviving partner, who is the only necessary party thereto."

Hence, we think, under the facts in this case, as developed in the pleadings and the evidence, that the service of summons on the defendant in error, J. W. Johnston, was sufficient.

The plaintiff in error in this case asks for a reversal for the reason that the verdict of the jury should have been in the alternative, for the reason of the specific property in the said petition described, or, in the event that it could not be so returned, for the value thereof. That is, that the jury returned a money verdict, instead of a verdict for the delivery of possession of the specific property described in the petition. We do not think this is reversible error. Section 4063 of the Statutes of Oklahoma, 1893, provides that in possessory actions, judgment "may be for the possesion or for the recovery of possession, or the value thereof in case the delivery cannot be had, and the damages for the detention."

Section 3918, Statutes of Oklahoma, 1893, provides: "Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit, made by himself, agent or attorney, and issues may be made upon such interpleader, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay."

This action is a proceeding in attachment, and while, by the interpleader, the defendant in error claims the right of the possession of the property, and while it is somewhat in the nature of a replevin action, we do not think that the verdict in this case should be the same as in an action or replevin. While it is true that the law provides that the verdict may be for the return of the

property, or for a judgment for the value of the p op rty, where the same cannot be returned, we do not think that the law ever intended that the jury should return a verdict commanding a certain act to be done which they at the time knew was impossible. In this case the property described in the petition, which was in litigation, had, by an order of the court, granted on the application of the plaintiff in error, been sold, and the proceeds converted into money, the same being brought into court. This action of the court rendered it impossible for the specific property to be returned, and a verdict of the jury, ordering such return, would have been entirely useless. This cause was tried by both sides on the theory that whoever would recover in the case should have, not the specific property, but the proceeds thereof.

Now, when that part of the verdict of the jury requiring the return of the specific property had been rendered impossible by the act of the plaintiff in error, and over the objection of the defendant in error, the plaintiff in error, should, in equity and good conscience, be estopped from asking and urging this as a cause for reversal.

The first point which is urged by the plaintiffs in their general brief, for the reversal of this judgment, is that the judgment and verdict are contrary to law and evidence in the case, on the grounds that the alleged sale from Lee Hanes, the original defendant in the attachment proceedings, to the interpleaders, Johnston and Hanes, was fraudulent as against the plaintiffs in error, creditors of said Lee Hanes; on the grounds (1) that said sale was not made in good faith, and for a fair and reasonable consideration, but was made for the purpose of hindering, de-

laying, and defrauding the other creditors of the Hanes Grocery company, including the plaintiff in error herein, and that such fraudulent intention was known to the defendants in error at the time of said sale, or was made under circumstances that would have led a reasonably prudent person to understand such fraudulent purpose; and (2) for the reason that no change of possession of the property pretended to be transferred by said sale was made, and that the purchasers did not take such possession as is contemplated and required by our statute.

Our statute, section 2663, chapter 27, page 541, Statutes of 1893, provides: "Every transfer of personal property, other than a thing in action, or a ship or cargo at sea, or in a foreign port, and every lien thereon other than a mortgage, when allowed by law, and a contract of bottomry or *respondentia* is conclusively presumed, if made by a person having at the time possession or control of the property, and not accompanied by immediate delivery and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or encumbrancers in good faith subsequent to the transfer."

This statute is identical with the statute on the same subject of California, and Dakota, and substantially the same as Colorado, Idaho and Montana.

The supreme court of California, in the case of *Young v. Poole*, cited in 13 Pac. p. 492, in passing upon a statute

identical with ours on the subject of the delivery of possession, decided that where the parties occupied similar relations to those claimed by defendants in error between Lee Hanes and T. C. Hanes, to-wit, the relation of employer and employe, where the employer sold personal property to the employe, and the said property was allowed to remain in the same building which it had previously occupied, and the only change of the possession was the change of the sign where the employe had a sign placed over the original sign, and he was in said sign named as successor to the original owner, the court there held that this was not such a change of possession as would constitute an immediate delivery, and an actual and continued change of possession, such as required by statute, and that said sale was fraudulent as to the creditors of the vendor.

The supreme court of Colorado considered substantially the same statute as ours in the case of *Lloyd v. Williams et al.*, reported in the 40th Pac. page 243. In this case the sale was made to a clerk of the vendor, who had been in the store for some months, (the same as the case at bar;) no inventory of the stock was taken upon making the sale, the signs on the store were unchanged, and nothing to indicate a change of possession, except that the vendor left the store on making the sale and did not return, and when the attachment levy was made, the vendee was present and informed the officers that he owned the goods, showing them at that time a bill of sale. Held by the court that the sale was void, there being no immediate delivery, and actual and continued change of possession, as required by statute. The court there, speaking through Chief Justice Elbert, says:

"The vendee must take actual possession, and the possession must be open, notorious and unequivocal, and such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser."

The court, in this opinion, further says:

"In the case at bar, when the attachment was levied, there was nothing about the store, or upon the premises, from which any person could infer that McIntosh was not still the owner. Nothing had been done to advise the public, or persons dealing there that the property had changed hands  No inventory was taken, and the goods were left in the same position which they had formerly occupied.  It is true that McIntosh was not there on the morning of the 17th, and Lloyd was there, but Lloyd had been there before.  During the whole time of the proprietorship of McIntosh, Lloyd was acting for him, in the business, as his employe  and agent; and it is fair to assume that McIntosh had not been there himself constantly.  The presence of Lloyd, and the absence of McIntosh, on that occasion, are both matters, which, in themselves, were entirely without significance.  It is also true that Lloyd told the officer that he was the owner, and showed him the bill of sale, but a mere bill of sale is no compliance with the law, and the statute does not permit the transaction to rest upon the declarations of the of the parties."  "Even if the plaintiffs before commencing their suit, had full knowledge of the transaction, the situation would not be altered.  They would only have known of a sale which was void as to them."

In support of this doctrine the court cites, *Perrin v. Reed,* 35 Vt. 2.

The Colorado court further says:  "This sale may have been made in good faith.  There is nothing in the

evidence to indicate that it was not. But the statute is peremptory in its terms, and whether there was fraud, in fact, or not, the transaction was of no avail, as against the plaintiffs."

An examination of this case will show that the only difference between that case and the one at bar, is whatever the proof in this case shows as to the change of the sign. In the case decided by the Colorado court, there was no change of sign. In this case, as to whether there was or was not a change of sign, the proof is by no means clear.

Again, the Colorado supreme court in the case of *Wilcox et al. v. Jackson*, reported in vol. 4 of the Pac. Rep. page 966, in a case where property was levied upon by attachment, and parties sought to recover possession of the property by virtue of a chattel mortgage, in construing a statute similar to our own, which statute is set forth in said opinion, and reads as follows: "Every sale made by a vender of goods and chattels in his possession, or in his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment."

It will be seen that this statute is substantially the same as ours, and in interpreting this statute the court there says: "The vendee must take the actual possession, and the possession must be open, notorious and unepuivocal, such as to apprise the community, or those

who are accustomed to deal with the party, that the goods have changed hands, and that the title to the goods has passed out of the seller into the purchaser'; this must be determined by the vendee's using the usual marks or *indicia* of ownership, and occupying the relation to the thing sold which owners of property generally sustain to their own property."

The evidence in that case showed the business was continued in the same building, the goods being sold at retail as before. The sign of Tribe & Jefferay was not removed, nor was there a new sign put up to indicate a change of proprietors. Jackson did not devote his time to the business, but Charles Jefferay, a brother of the partner, George H. Jefferay, was placed in charge. He was a clerk of the former firm, and being accustomed to clerk there, his appearance indicated no change. The only visible change that appears to have been made was the employment of another clerk, one Curtis. But can it be said that the mere employment of an additional clerk in a mercantile business is a sufficient notice of a change of ownership to put purchasers and creditors upon their inquiry? And in this case the court held that there was not such a change of the possession as to render the sale valid.

One of the reasons alleged by the plaintiff in error for the contention that this case was fraululent, as to creditors, is that the consideration paid was inadequate, and not a fair price for the property purchased. The proof in this case shows that the interpleader, Johnston, held notes against Lee Hanes for $1,150, and that payments had been made thereon reducing the amount due at the time of the sale to about $950; that R. L. Hanes was

indebted to his father, T. C. Hanes, in the sum of $600 on a settlement for which R. L. Hanes executed his note to T. C. Hanes. It is claimed that, as a part of the consideration also, that R. L. Hanes owed one Wallace a note of $600, on which T. C. Hanes was surety. Also a note to the bank of $200 on which T. C. Hanes was surety. And also a note of $125 to one John Carson, on which T. C. Hanes was surety, making a total consideration as claimed by the interpleaders of $2,275. The proof shows that the property conveyed by said bill of sale was worth at the time of said sale $3,000 to $3,300, thus making the value of said property exceed the consideration some where from $700 to $1,000.

In passing upon this question the supreme court of Kansas, under a statute somewhat similar to the statute of Oklahoma, the difference in the two statutes being that the language used in the Kansas statute is: "That fraud from lack of change of possession is presumed until it is shown that the sale was in good faith and for an adequate consideration," whereas, in our statute, the fraud from lack of change of possession renders the sale absolutely void.

The Kansas supreme court, in the case of *Lewis v. Hughes*, 49 Kansas, page 43, says: "Where a creditor purchases property of his debtor, who is insolvent, and whom he knows is attempting to dispose of his property to defraud his creditors, and pays for the same with a note, or an account long overdue, he must act in good faith and pay or allow his debtor an adequate price or fair value for the property purchased."

In support of his doctrine, the Kansas court cites: *Phillips v. Reitg*, 16 Kan. 396; *McDonald v. Gaunt*, 30 Kan.

693; *Gollober v. Martin*, 33 Kan. 252; *Bush v. Collins*, 35 Kan. 535.

The statute of Idaho makes the sale of personal property in the possession of the vendor, except things in action, unaccompanied by immediate delivery, and not followed by an actual and continued change of possession, void as to creditors and subsequent purchasers.

In the case of *Harkness v. Smith*, reported in the 28th Pac. at page 423; being a case where G., being largely indebted, sold a stock of merchandise to H., one of his principal creditors who held a chattel mortgage upon a stock of merchandise owned by G. The sale was made at the residence of H., twenty-five miles from the place where the merchandise was. No invoice was taken, no inspection or examination of the stock was made, no change in the clerical force, no change in the conduct or management of the business. G. continued to conduct the business as before, except that he added the abbreviation, "(Mg'r.)" when signing checks, letters, etc. *Held*, that there was no such immediate delivery, and actual and continued change of possession as the statute required, and the sale was void as to creditors. In that case the court uses the following language: "Under this section the sole inquiry is, was there an immediate delivery, followed by an actual and continued change of possession? No question of intent, *bona fides*, or notice cuts any figure in such case."

The court further says, in the body of this opinion:

"It is not enough that there is an actual delivery and an actual change of possession between vendor and vendee, so long as the property, without legal excuse, is placed back in the same condition and the same apparent rela-

tion to the vendor that there is no such manifest and continued change of possession as would indicate to the world that there had been a change of title."

Now, measured by the rule laid down in our statute as to delivery of possession, and the construction put upon similar statutes herein cited, and applying the evidence in this case to that rule, was there such an immediate change, followed by an open and continued possession, as would make such sale valid as against the rights and interests of creditors? The evidence shows that the owner of said property at the time of the sale, R. L. Hanes, was at some distance from Oklahoma City, where said goods were located, to-wit: at Sulphur Springs, Indian Territory, and had been there for some three weeks prior to said sale; that during his absence he had left his father, T. C. Hanes in charge of the store, with Fightmaster and Ballard as clerks. The interpleader here, T. C. Hanes, Fightmaster and Ballard, remained in the possession of the store, directing the business in the usual manner up until 2 o'clock, on October 1, 1895, when this attachment was levied. The only proof offered to show any change of possession, was the testimony of the interpleaders themselves, Hanes and Johnston. Johnston testifies that on the morning of the 1st, when he returned from Sulphur Springs, after the execution of this bill of sale, he opened the store and was standing in front of the store, when the clerk, Fightmaster, who had been in the habit of opening up in the morning, came along. He says he then told the clerk, in a joking way, that he had found the door open and was standing there watching it until some one would come. He says that he afterwards, in the same conversation, and before entering the store, told Fightmaster that he and T. C. Hanes had bought the stock of

goods; that a new firm was in, and that if he continued his services it would be under a new firm. As to this testimony, Fightmaster's evidence is exactly to the contrary. He says that the only talk he had that morning in front of the store with Mr. Johnston was that detailed by Johnston about finding the door open, which Johnston says was said in a joke, but Fightmaster says he did not so understand it. He says nothing was said to him by Johnston about any change in possession or change of proprietors, and that the first he knew from Johnston about any change of proprietors was sometime along towards noon, when he came into the store, and saw Johnston figuring on the books, and asked him what he was doing. He said that he and Mr. T. C. Hanes were in the possession of the stock, that he was figuring up to see how they stood, and that he thought they had saved Lee Hanes about one thousand dollars. There was some evidence to show that some one was employed to paint a sign on the front of the awnings of the store building, but the evidence is not clear as to what kind of sign it was to be, and there is much dispute as to just when this sign was painted. Johnston thinks the sign was painted about noon. That is also the testimony of one of the painters, who assisted in painting the sign; but when we bear in mind that this witness could not tell the month or year, or the season of the year in which the sign was painted, and the further fact that he says his recollection is that he left Oklahoma City in the early part of September, 1895, his testimony on the subject can have but little weight. Homer Fightmaster seems to be a disinterested witness; he testified that whatever sign was painted there, that it was not done until about the time of the levy of this attachment. Fightmaster also testified that in the forenoon of Octo-

ber 1, 1895, which, according to the contention of the interpleaders, was after they had taken possession under this bill of sale he had some bills to make and collect, and he was instructed by T. C. Hanes to stamp upon the bills with a rubber stamp the name of the Hanes Grocery company, which instructions he followed.

Therefore, we think, taking into consideration the peculiar relations of the parties, that this sale was made at a distance from where the goods were located without an examination as to the vendees, as to the kind, quality or amount of the goods; that no inventory was taken, and that there was no manual change of possession and no visible change in the arrangement of the store—it does not seem to us that there was such a change of possession as would render such a sale valid as against creditors of Lee Hanes, or of the Hanes Grocery company.

This question of the delivery of possession, and the question of the good faith and *bona fides* of the sale are largely questions of fact, and the rule established by this court is that on questions of fact the verdict of the jury will not be disturbed by this court, where an inspection of the record will show that there is evidence which reasonably sustains the verdict. But it is always the duty of this court to examine carefully the evidence, as developed in the record, and determine whether such evidence does reasonably sustain the verdict rendered by the jury. We are aware that it is largely the province of the jury to determine the weight and credibility to be given to the testimony of witnesses. The jury have certain facilities for determining truth and detecting falsehood in the testimony of witnesses which this court does not have, such as the general appearance of the witnesses before them,

their intelligence, candor, or lack of candor, their de-
meanor while on the stand, their manner and appearance
while giving their testimony, and from these sources the
jury are better able to judge of the weight and credibility
of the testimony than this court possibly can be on a
mere examination of that testimony on paper; but, when
the court, from an examination of all the evidence as de-
veloped in the record, is satisfied that there is not evi-
dence which reasonably sustains the findings, then it is
the duty of the court to reverse and set aside the verdict
of the jury. We cannot conceal from ourselves the fact,
that however improper it may be, jurors are sometimes
biased and influenced by local surroundings, or their
knowledge of the parties, and sometimes where
the interests of an individual come in contact
and run contrary to the interests of corpora-
tions, jurors sometimes allow their views and feelings in
favor of individuals to warp and distort their judgment;
and because these things are true is the reason of the
rule adopted by this court, that if the court can say, from
a fair and candid examination of the whole record, that
the evidence does not reasonably support the verdict of
the jury, then the court should vacate and set such ver-
dict aside.

We have examined carefully the instructions of the
court, and we are inclined to think that in the main the
instructions of the court were correct, and that as to the
law of the case the jury were properly instructed; but, it
seems to us, when we view the evidence in the light of the
instructions, that the jury either lost sight of one instruc-
tion of the court, or disregarded it.

Instruction number 7 given by the court is as follows:

"The court further instructs the jury, that if you believe from the evidence that interpleader, T. C. Hanes, subsequently to the dissolution of the said co-partnership of Hanes and Fightmaster, represented himself to any of the agents or employes of plaintiff, to be a partner with R. L. Hanes in the Hanes Grocery company, and that said plaintiff relied upon said representations, and for that reason extended credit to the Hanes Grocery company, which it otherwise would not have done, then the said interpleader, T. C. Hanes, cannot recover in this action, although he may not, in fact, have been a partner of the said R. L. Hanes in said business."

Now, what is the proof as to the statement made by the interpleader, T. C. Hanes, subsequent to the dissolution of the partnership of Hanes and Fightmaster with regard to his being a partner of R. L. Hanes, in the business? T. C. Hanes denies that he ever made any such statement to the effect that he was a partner. The testimony of O. H. Waterhouse, (record, page 320,) is, that in September, 1895 T. C. Hanes told him he was a partner in the business now and that Lee was away sick. At the time of this conversation, Waterhouse says that T. C. Hanes was pressing him for payment of a debt due the Hanes Grocery company. Leach, another witness (record, page 372,) says T. C. Hanes told him he was a member of the firm. This talk was in April, 1895. Again, the same witness, (record, page 376,) says that in a conversation between himself, Lee Hanes and T. C. Hanes, Lee Hanes told him, in the presence of T. C. Hanes, that T. C. Hanes, his father, was a partner in the business. Afterwards Leach says that T. C. Hanes told him several times between April and October, 1895, that he was a member of the firm; that he had taken hold of the business, and expected to make some money; that he had made money at one time in the

grocery business, and believed he could again. The testimony of Stoker, (record, page 243,) is that Lee Hanes told him in the presence of T. C. Hanes, that T. C. Hanes was a partner in the business.

While it is true that the testimony of Stoker is not entirely satisfactory, as he is not clear as to whether the question he asked was understood, by Lee Hanes, and as to whether T. C. Hanes understood what was said, nevertheless, it is apparent that Lee Hanes did say, on that occasion, that T. C. Hanes was a partner. The testimony shows that T. C. Hanes, at all times, when in and about the store and business, seemed to be taking an active interest in the business. We find on several occasions, in the testimony of several witnesses, he was pressing several people who were indebted to the company for payment. That he was signing notes and going security with various persons for the purpose of paying their indebtedness to the Hanes Grocery company.

We find that just before this sale he was making arrangements with the plaintiffs herein, with the Ranney-Alton Mercantile company, through their agent, Leach, to settle up their indebtedness to that company; that he was giving out checks at the rate of one hundred dollars per week to this company to pay off their indebtedness. Therefore, it seems to us, that under all this testimony, and the evidence of all these witnesses, that the unsupported, naked denial of this man, T. C. Hanes, was not sufficient to authorize the jury to disbelieve the statements of these numerous witnesses, who testify that he had told them that he was a partner in the firm.

It seems to us that the testimony clearly shows that the credit given by the plaintiff to the Hanes Grocery com-

pany, was on account of the representations of T. C. Hanes that he was a member of the firm; and, if this was true, then under the instruction number 7, given by the court, this verdict should have been in favor of the plaintiff in error, and against the interpleaders.

A copy of the books of the Hanes Grocery company, (record, page 296,) seems to contradict the testimony of T. C. Hanes, as to the amount due him from Lee Hanes. That book shows that on April 17, 1895, there was due from T. C. Hanes to the Hanes Grocery company, the sum of $1861.81. It seems strange that if the indebtedness alleged by T. C. Hanes to be owing to him by Lee Hanes, was due at that time, that the books of the Hanes Grocery company, which were in fact the books of Lee Hanes, and to which books T. C. Hanes had access, and from the evidence must have been familiar, should be permitted to show that he was indebted to the Grocery company, in the amount therein stated.

Taking all these facts and circumstances together, with the statements of the parties concerning the transactions, and taking into consideration all the circumstances surrounding this sale, as shown by the evidence, the relationship of the parties, and their circumstances concerning it, such as the statement of Johnston, as sworn to by the witness Graves, and the witness Fightmaster, that they had saved Lee Hanes one thousand dollars by the transaction, and the statement of T. C. Hanes to the witness, Leach, that they did not come down here afoot and would not go out afoot, with all of the circumstances surrounding the transaction, and after a full and careful consideration and investigation of this evidence, as a whole, we are compelled to say that we are satisfied that the

evidence does not reasonably sustain the verdict of the jury, hence we think the decision of the district court should be reversed, and the cause remanded for further hearing in that court.

Burwell, J., having been of counsel in the court below, not sitting; all of the other Justices concurring.