## W. T. RAWLEIGH CO. v. GAUNTT.

No. 26169.     Jan. 28, 1936.

Gerrit J. Schutt and Dolman, Dyer & Dolman, for plaintiff in error.

R. A. Howard, for defendant in error.

BAYLESS, J. The W. T. Rawleigh Company, a corporation, hereinafter called company, appeals to this court from a judgment of the district court of Carter county, Okla., in favor of D. E. Gauntt et al. The prevailing parties will be referred to by name.

The appeal arose thus: Company obtained a judgment against J. W. Gauntt (and others not affected by the appeal) and levied upon a telephone exchange and appurtenances as the property of J. W. Gauntt. D. E. Gauntt thereupon intervened and claimed to be the owner of said property. Hattie Gauntt also intervened and claimed to have a chattel mortgage upon the property. The matter was then tried upon the issue between company and D. E. Gauntt, and the jury's verdict was in his favor.

The evidence of the parties is not in conflict upon the material points, and the facts may be stated in chronological order as follows: Prior to the year of 1929, J. W. Gauntt was the owner of this property and had given a chattel mortgage thereon to Hattie Gauntt, his wife. In the year 1929, J. W. Gauntt sold this property to Continental Telephone Company for a consideration of $10,000, to be paid as follows: $2,000 cash, which was paid, $3,000 to be paid at a later date, and the assumption and agreement to pay the $5,000 note secured by the chattel mortgage held by Hattie Gauntt. Up to the time of this sale all persons had understood that J. W. Gauntt was the owner, and the switchboard was in the home of J. W. Gauntt and Hattie Gauntt. When this sale had been made the purchaser made an inventory of the physical properties, sent two of its agents down at various times, exercised some control in the matter of employing help, but continued J. W. Gauntt in the management and made no change in the physical arrangements. This sale was not kept secret, for some of the subscribers (who testified for company) and other witnesses knew of it. This arrangement continued until the due date of the $3,000 payment (which date is not shown in the record), whereupon the purchaser refused to comply with the contract of purchase, defaulted in the payment and turned the property to Hattie Gauntt. She so testified, and so did an officer of the purchasing company. Her right to receive the property seems to have been conceived to arise because of her chattel mortgage. October 28, 1930, company approved a contract between it and J. O. Woodley, and a surety bond for Woodley with J. W. Gauntt and others as sureties. The contractual arrangements were renewed or continued by similar contract and bond on January 2, 1932. From October 28, 1930, company sold Woodley goods and on April 26, 1933, he was indebted to company and with J. W. Gauntt and the other sureties gave company a note

for $995.82. From the time Hattie Gauntt obtained the property upon default of the purchaser (date not shown) until in March, 1933, she claimed not only the possession, but the title, and J. W. Gauntt has not controverted her claim; although, in so far as the public was concerned, no one seemed to have known this. All outward manifestations remained as they had theretofore, with J. W. Gauntt in full control. March 21, 1933, according to the testimony of Hattie Gauntt and D. E. Gauntt, her son, he sold the property to the son for $2,200, $1,000 paid in cash installments and $1,200 evidence by a note and chattel mortgage, the basis of the claim herein of Hattie Gauntt. From that date until the date of the levy and trial the situation of the business and its operation continued as before. D. E. Gauntt left the management of the property to J. W. Gauntt, his father, and took no active interest in the business. One of company's officers gave a deposition wherein he said company had never had any knowledge or information that J. W. Gauntt had disposed of his title to this property, although there is attached to his deposition an exhibit, identified by him as being in his control (as officer of company) wherein a financial agency informed them of the sale and that it probably had not been completely carried out. Company levied its execution July 27, 1934.

Company relies upon these facts to establish that the mortgage from J. W. Gauntt to Hattie Gauntt, and the sale from J. W. Gauntt to Continental Telephone Company, were fraudulent within the meaning of section 10008, O. S. 1931; that Hattie Gauntt acquired no title thereto by the ostensible delivery of the property to her, and that her sale to D. E. Gauntt and his chattel mortgage to her were without legal basis and fraudulent within the said section, supra.

Some question is attempted to be made in the brief of company concerning the validity of the mortgage from J. W. Gauntt and Hattie Gauntt and her right to receive the property from the Continental Telephone Company.

Since D. E. Gauntt's title depended upon the validity of Hattie Gauntt's title and right to sell, it is our opinion that the issue between the company and Hattie Gauntt should have been tried first and a judgment had as to the effect of J. W. Gauntt's chattel mortgage to her and Continental Telephone Company's transfer and delivery of the property to her. However, the parties stipulated for a trial first of the issues between D. E.

Gauntt and company; and, during the trial of this issue, company objected to the introduction of evidence of the chattel mortgage from J. W. Gauntt to Hattie Gauntt upon the theory that it was without issues then being tried.

The case was tried and the jury instructed as to the issue of ownership of D. E. Gauntt based upon the sale from J. W. Gauntt to Continental Telephone Company and the sale and delivery of Continental Telephone Company to Hattie Gauntt and the sale from Hattie Gauntt to D. E. Gauntt. Upon such a record and the express stipulation of the parties, we are not passing on the issue of the validity of the dealings between J. W. Gauntt and Hattie Gauntt.

It is clear to us from this record that there is evidence disclosing that J. W. Gauntt sold this property to Continental Telephone Company before company ever assumed any legal relationship to him. The physical characteristics of the property made actual manual delivery impossible. It is clear to us from this record that such sale and such transfer of possession as was made wer substantially in compliance with the statute, and therefore not fraudulent as to the creditors of J. W. Gauntt.

The case below was tried upon the theory advanced by company that the sale from J. W. Gauntt to Continental Telephone Company was fraudulent. This issue was tried and the jury decided against plaintiff on this theory; therefore, in view of the theory under which the case was tried, it becomes unnecessary to determine the rights as between Hattie Gauntt, J. W. Gauntt, and Continental Telephone Company, especially since there is no testimony attempting to show that J. W. Gauntt ever reacquired title after the first sale to Continental Telephone Company.

If J. W. Gauntt sold the property to the Continental Telephone Company and retained no title in himself, and if the record fails to disclose that he subsequently acquired title in himself, then, clearly, company had no right to levy upon this property.

This brings us to this point. Do the facts (1) that J. W. Gauntt remained at all times in the actual control, (2) that J. W. Gauntt at times held himself out as the owner and at other times merely as the agent of the owner, (3) that much if not all of the transactions after the default of the purchasing company were known only to the Gauntts (except such notice as the recordation of

their instruments gave), when viewed in the light of all of the facts and circumstances set out herein, justify withdrawing the case from the jury and rendering judgment thereon, as a matter of law? We think not.

By the statute the question of fraud is made one of fact and not of law. This does not mean that all cases must be submitted to the jury (Ranney-Alton Merc. Co. v. Hanes, 9 Okla. 471, 60 P. 284), but the courts should not be too strict in their discretion upon this point, and must not be too hasty to invade the province of the jury. The record before us strikes us as being one properly to be submitted to a jury. The asserted error in this respect is not sustained.

The second contention questions the instructions. We have examined the instructions requested and refused, and those given. We find no error.

Judgment affirmed.

OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., dissents.