DRUMM FLATO COMMISSION COMPANY, Appellant, v. W. E. SUMMERS, Defendant; J. T. SUMMERS et al., Interpleaders, Respondents.

**St. Louis Court of Appeals, March 12, 1901.***

1. **Interpleader, Nature of:** REPLEVIN. An interplea is in the nature of a replevin suit.

2. ——: ——: PARTIES, INTERESTS OF. And in such a suit the respective interests of the parties may be ascertained and settled.

3. ——: ——: ——. And in the case at bar, the jury found that the interpleaders were joint owners of the cattle in question.

4. **Partnerships:** PARTIES AS PARTNERS: PLEADING AND PRACTICE: STATUTORY CONSTRUCTION. The purpose of section 2186, Revised Statutes 1899, is to dispense with proof of partnerships, when it is alleged that the party suing or being sued is a partnership, unless the partnership is denied under oath by the party.

5. **Practice, Trial:** PRACTICE, APPELLATE: EVIDENCE. Where evidence is contradictory, it is for the trial court, not the appellate court, to interfere if the verdict is against the weight of the evidence or is the result of passion or prejudice.

*This case was received too late to be placed in chronological order.

Appeal from Carter Circuit Court.—*Hon. John G. Wear,* Judge.

AFFIRMED.

*Orchard & Saye* and *O. L. Munger* for appellant.

(1) We understand that it is not customary for the appellate court to consider the evidence when a jury has found the issues for a certain party, but it strikes us that there are times when the court should go into the evidence, and we think this is one of the times and one of the cases. We think the evidence is plain that there was fraud practiced in this case and that it was clearly proven. Take the fact that W. E. Summers, the defendant in the attachment suit, had charge of all the cattle up to the time of the attachment was served and had been buying feed for them. Mitchell & Bro. v. Railton, 45 Mo. App. 273; Flynn v. Neosho, 114 Mo. 573. (2) And they being partners, as is admitted by the pleadings, W. E. Summers had an interest in the cattle and the verdict should have been for plaintiff and against interpleaders. (3) The interplea was filed by J. T. Summers and A. B. Summers, and the evidence of John Summers, as shown by his deposition, is, that he owned twenty head of the cattle in question in his own right; that he and A. B. Summers (Dock) owned forty-three head together. In other words, Dock and Bill owned forty-three head and John bought a half interest in the forty-three head, which would make John own twenty head. That being the case, Dock was not a proper party to interplead for the twenty head, as the real parties in interest must sue. The interplea of John and A. B. should have been for forty-three head, and John for twenty head, separately. R. S. 1889, sec. 1990; Scharf v. Meyer, 135 Mo. 428. (4) The court

erred in giving instruction number 3, on part of interpleaders, for the reason that it is not predicated on all the evidence. It assumes that W. E. Summers had an interest in the sixty-three head of cattle and ignores the fact that J. T. Summers claimed to be the owner of twenty head of the cattle and that W. E. Summers had never owned an interest in said cattle. This instruction is misleading, does not go to the whole of the evidence and should not have been given. Beauchamp v. Higgins, 20 Mo. App. 514.

*W. J. Orr* for respondents.

(1)    Appellant having failed to comply with rule 15 of this court and the requirements of section 2301, Revised Statutes 1889, we ask that this appeal be dismissed and the judgment of the trial court be affirmed. Halstead v. Stone, 147 Mo. 649; Walser v. Wear, 128 Mo. 652; Brann v. Canon, 118 Mo. 595; Garrett v. Coal Co., 111 Mo. 279. (2)    The only reply we deem necessary to make to what appellant's counsel designate "Argument and Brief of Appellant" is, that in each and every instance counsel have invited this court's attention to only a part of the testimony on the points raised. In no instance do they pretend to give the contrary evidence on the part of interpleaders, but ask this court to review the action of the trial court and the verdict of the jury in consideration of appellant's evidence alone. We know of no precedent for such unfair and unjust contention. The statement we have tried to furnish the court is, we contend, based on the evidence, and if found to be true, is a complete answer to each and every proposition urged by appellant in this court. And we invite the court's attention to the record herein for a verification thereof. To sustain our charge that all of the evidence on a given proposition is not cited from the record, we will call the

court's attention to only a part of the evidence contradictory to that referred to by counsel. Counsel referred to depositions of Lane and Kimberlin to sustain the charge that Bill retained control of the sixty-three head of cattle up to the time they were attached. These witnesses do not refer to the time they were attached, and Dock testifies that Bill bought the feed from Lane and Kimberlin at his request and for him, while both the interpleaders testified that the cattle had been at Sam Charles's farm, where they (Dock and John) had taken them several days before the attachment. And Dock gives the names of a number of parties from whom he and John bought feed for these cattle, such as fodder and stalk fields, after John bought out Bill's interest.

BLAND, P. J.—Plaintiff brought suit by attachment in the Howell Circuit Court against W. E. Summers and had attached sixty-three head of steers which were afterwards sold by order of the judge of the court.

John T. and A. B. Summers appeared and filed the following interplea: "That on the twenty-eighth day of February, 1896, by virtue of a writ of attachment issued before that time in said cause from the office of the clerk of Howell county, Missouri, to the sheriff of said county, in favor of Drumm Flato Commission Company and against the property of W. E. Summers, the said sheriff did levy and seize, as the property of said W. E. Summers, sixty-three head of two and three-year-old steers of the value of fifteen hundred dollars, and afterwards on the twentieth day of March, 1896, pursuant to the order of the judge of Howell Circuit Court, sold said steers and retains the possession of the proceeds thereof which amount to nine hundred and fifteen dollars. Interpleaders further say that at the time of said levy and seizure of said steers, the said steers, nor any of them, were the property of W. E.

Summers, but were and still are absolutely the property of these interpleaders, John T. Summers and A. B. Summers, and are not and were not subject to said attachment.

"Wherefore, they pray judgment for the recovery of the proceeds of said property, the said sum of nine hundred and fifteen dollars, and for one hundred dollars, their damages."

To the interplea the plaintiff filed the following answer, omitting caption, to-wit: "Now on this day comes the plaintiff, Drumm Flato Commission Company, and for answer to the interplea of John T. Summers and A. B. Summers filed herein, admits that there was a pretended sale of the cattle in question by W. E. Summers to said interpleaders and that the said interpleaders claim title to the property described in their interplea by virtue of such pretended purchase from W. E. Summers to them. That at the time of such pretended purchase, the said W. E. Summers was largely indebted to this plaintiff and others, and for the purpose of defrauding, hindering and delaying his creditors in the collection of their just debts, the said W. E. Summers pretended to sell and transfer all his property to the said interpleaders. That said interpleaders well knew of his fraudulent scheme on the part of the said W. E. Summers, and said interpleaders pretended to buy said property for the purpose of aiding and assisting the said W. E. Summers in said fraudulent design. The plaintiff denies that the interpleaders are the owners in good faith, or that they have any right or title to the property as against the creditors of W. E. Summers. Plaintiff, for further answer, states that the debt sued for was originally contracted by W. E. and A. B. Summers. That said W. E. and A. B. Summers were partners in business at the time and were partners at the institution of this suit. That W. E. Summers executed the note sued on, and also executed a mortgage on two hundred and twenty head of cattle. That said W. E. Summers sold said

cattle without the consent of plaintiff and that the cattle and property described in the interplea were purchased with the proceeds of the sale of the mortgaged cattle.    Wherefore, plaintiff says that the debt was a partnership debt and that the cattle were purchased with the assets of plaintiff.    Wherefore, plaintiff asks judgment in the interplea and that said interplea be dismissed."

A change of venue of the interplea was awarded to Carter county, where at the October term, 1897, the interplea was tried by jury.    Verdict and judgment for the interpleaders. Plaintiff appealed.

The evidence of the interpleaders is that the defendant and interpleaders are brothers; that for several years prior to 1895, they owned and used, in common, a farm in Howell county, which they with their mother inherited from their father; that they bought and sold stock, sometimes together, sometimes on individual account; that in the fall of 1893 John Summers bought for himself, and with his own means, twenty head of calves, which he kept until they were attached in this suit; that in the fall of 1895 W. E. and A. B. Summers went to the State of Arkansas and bought forty-three head of two and three-year-old steers in partnership and drove them to the farm in Howell county, and they were kept with John's twenty, in the neighborhood, until they were all attached at the same time and taken by the sheriff on February 28, 1896.    That W. E. Summers owed John Summers $840—and that about the last of January or first of February, 1896, John bought the interest of W. E. Summers in the forty-three head of Arkansas cattle for three hundred dollars and gave him credit for that amount; that after John bought the interest of W. E., it was agreed between John and A. B. Summers that they would own these cattle together, and they further testified that it was

Vol 89 app—20

also understood that the twenty head owned by John individually should also be owned by them jointly, thus giving John a two-thirds interest in the seventy-three head and A. B. a one-third interest. It is not altogether clear, however, from their testimony, that this was the understanding between them. John, before the trial, had given his deposition (read in evidence) in which he stated that he claimed twenty head as his own and a half-interest in the forty-three head.

The appellant introduced testimony tending to prove that W. E. Summers was not indebted to John; that John was insolvent at the time he testified he bought the cattle from W. E. That W. E., on April 1, 1895, owed the appellant $2,550—to secure which he gave it a chattel mortgage on two hundred and twenty head of steers; that two hundred of these were driven into Ozark county, Missouri, and sold by W. E. Summers before the maturity of the mortgage, and that the remaining twenty were left on the Summers' farm in Howell county, and were a part of the cattle attached in the suit. Also, evidence tending to show that W. E. and John Summers had entered into a conspiracy to defraud the appellant and that in pursuance of that conspiracy, W. E. had, without consideration, conveyed his interest (one-fourth) in the Summers' farm and some property in West Plains to John, a short time before the attachment was sued out. Also, evidence tending to prove that after the time John testified that he had bought W. E.'s interest in the cattle, W. E., in the presence of John claimed to own and offered to sell the sixty-three head of cattle that were attached and that John did not deny the truth of the claim or object to the offer to sell. Also, evidence tending to prove that W. C. Evans bought all but two or three of the steers there were on the Summers' farm in February, 1895.

There is a mass of testimony as to the mortgage given by W. E. Summers to appellant, on two hundred and twenty

head of cattle and the purchase and disposition of three hundred and odd other steers by J. M. Lenox and John Summers, which is of no special value in this case, and was admissible only for the purpose of explaining some of the transactions had between John and W. E. Summers in the cattle business, and in settlement of their mutual accounts, which had a tendency to show that W. E. was not indebted to John.

The appellant assigns as error the giving of the following instructions, numbers 1, 3 and 7, for respondents:

"1. You are instructed that although you may believe that the sale of the land and town lots was made by W. E. Summers for the purpose of hindering, delaying or defrauding the creditors of W. E. Summers, still it is your duty to find for the interpleaders, as to the cattle, if you find that J. T. Summers purchased W. E. Summers's interest in the cattle for the purpose of collecting a debt or part of a debt due to him from said W. E. Summers as explained in other instructions given you. And you are further instructed that the fact that J. T. and W. E. Summers were brothers, or that the deeds were made, executed and acknowledged and recorded after night, would not render the sale of the land fraudulent if the consideration for said land was the assumption by J. T. Summers of the payment of certain debts owing by said W. E. Summers,. and for the payment of which John T. Summers was also security, and for the further consideration of indebtedness due from W. E. Summers to John T. Summers.

"2. The court instructs the jury, that a debtor in failing circumstances, and without sufficient property to pay all of his creditors, has the right to prefer one or more of his several creditors, he will pay, and such preferred creditor has the right to push forward and secure such preference, even if by so doing the debtor is left without sufficient or any property to pay other creditors; and although such transfer has the effect of hinder-

ing and delaying such other creditors in the collection of their debts, it is not fraudulent in law.

"3. That although you may find and believe that W. E. Summers was insolvent, and that he sold his interest in the cattle for the purpose of hindering and delaying his other creditors, and although you may also find that J. T. Summers knew that W. E. Summers so intended to hinder and delay his other creditors, still if you find that W. E. Summers was indebted to J. T. Summers, and for the purpose of securing his debt, J. T. Summers purchased the interest of W. E. Summers and gave him credit on such indebtedness, then such transaction was valid in law, and J. T. Summers is entitled to recover such interest, unless you find that sale was made for the purpose of hindering and delaying the other creditors of W. E. Summers, and not to secure or pay a just debt.

"7. That if you find from the evidence that the alleged sale by W. E. Summers to J. T. Summers for a one-half interest in the forty-three head of cattle was fraudulent as defined in the other instructions, but further find that A. B. Summers was the owner of the other one-half interest, then said A. B. Summers will be entitled to recover the value of such interest estimated by the sum of the whole number bought at sheriff's sale which is $915, and you would be authorized to return a verdict in his favor not to exceed the sum of $395. And if you further find that J. T. Summers was the owner of twenty head in his own right and that the alleged purchase of a one-half interest in the forty-three head was fraudulent, still said J. T. Summers is entitled to recover the value of such twenty head, estimated as before stated by the amount the sixty-three head brought, and you would be authorized to return a verdict in his favor for such sum."

The first instruction is perhaps open to criticism, but when

read in connection with numbers one, two and three, given for appellant, to-wit:

"1. The court instructs the jury that, before they can find the issues for the interpleader, John T. Summers, as to the interest he claims through W. E. Summers, they must find the following facts: First. That W. E. Summers was honestly indebted to J. T. Summers at the time of the sale. Second. That he, John T. Summers, bought the property to secure and collect an honest debt, and not to aid the defendant to cover up his property and put it out of the reach of the ordinary process of law. You are instructed that if you find the defendant, W. E. Summers, was not indebted to interpleader, John T. Summers, at the time of the sale, or that there was a collusion between the interpleaders and defendant, W. E. Summers, to cover up his property and put it beyond the reach of the law, then the interpleader John T. Summers can not recover the interest claimed through W. E. Summers and you should find for the plaintiff as to that interest.

"2. The court instructs the jury, that if they find from the evidence and all the facts surrounding this case, that the cattle in question, or any portion of them were the property of W. E. Summers at the time of service of attachment, then your finding should be for the plaintiff, the Drumm Flato Commission Company as to such portion of said cattle as they find belonged to W. E. Summers.

"3. The jury are instructed that the sale of the cattle in controversy, to the interpleaders, J. R. Summers and A. B. Summers, was void as against the plaintiff in this case, the Drumm Flato Commission Company and the other creditors of said W. E. Summers, unless it appears from the evidence that such sale was accompanied by a delivery of the cattle sold to said interpleaders, in a reasonable time, regard being had as to the situation of said cattle, as to facility for such delivery

and that such delivery of the cattle was followed by an actual, not formal, and continued, not temporary, change of possession of said cattle, as to said W. E. Summers down to the time of the levy of the writ of attachment of the Drumm Flato Commission Company, by the sheriff, and that such change of possession was visible, open and notorious; and unless you so find, your verdict must be for the plaintiff, Drumm Flato Commission Company, as to the interest of W. E. Summers to the forty-three head of cattle, although you may find that the interpleaders bought the cattle in good faith." The jury was fully and correctly instructed in respect to the right of W. E. Summers to make John Summers a preferred creditor.

Instruction number 3 is in harmony with all the authorities on the subject. Alberger v. White, 117 Mo. 347; Albert v. Busel, 88 Mo. 150; Frederick v. Algair, 88 Mo. 598.

All that is necessary to be said in regard to instruction number 7 is that an interplea is in the nature of a replevin suit, or, to use the language of the courts, "it is a replevin suit engrafted on the attachment proceeding." Hillman v. Pollock, 47 Mo. App. 205. In such a suit the respective interests of the parties may be ascertained and settled. Goggshall v. Munger, 54 Mo. App. 424; Hickman v. Dill, 32 Mo. App. 509; Gillham v. Kerone, 45 Mo. 487. The jury, however, found that respondents were joint owners of the cattle and the instruction did no harm even if it had been erroneous.

II. At the close of all the evidence, appellant moved the court to instruct that the interpleaders, under all the evidence, could not recover. The contention here is, first, that this instruction should have been given for the reason the answer to the interplea set up that A. B. and W. E. Summers were partners and that they owned the cattle in partnership and that this allegation was not denied under oath as required by section 2186, Revised Statutes 1889. The section is in-

applicable to this case. W. E. and A. B. Summers are not sued as partners. W. E. Summers is not a party to the interplea. The purpose of the statute is to dispense with proof of partnership when it is alleged that the party suing or being sued is a partnership, unless the partnership is denied under oath by the other party; second, that under all the evidence, it is conclusively shown that interpleaders were not the owners of the property attached. In view of the fact that both interpleaders swore positively to their ownership of the cattle, it was proper to submit that issue to the jury, however strong and overpowering may have been the countervailing evidence. In such circumstances it is for the trial court, not the appellate court, to interfere if the verdict is against the weight of the evidence or is the result of passion or prejudice. Williams v. R'y, 153 Mo. 487; Chouquette v. R'y, 152 Mo. 257; Huth v. Dohle, 76 Mo. App. 671; Tower v. Pauly, 76 Mo. App. 287.

Discovering no reversible error in the record, we affirm the judgment. All concur.