## FARMERS STATE BANK OF NEWKIRK v. HESS et al.

No. 18950. Opinion Filed April 9, 1929.
Rehearing Denied Sept. 10, 1929.

C. L. Pinkham, H. S. Burke, and J. H. Hill, for plaintiff in error.

G. A. Chappell, for defendants in error.

ANDREWS, J. The plaintiff in error, as plaintiff below, filed two certain suits to recover judgments on a number of promissory notes. In each case there was an attachment of certain property consisting of crops in field. In each case the defendants in error filed interpleas claiming ownership of the property attached and praying that the attachment be dissolved as to the property claimed by them and that said property be discharged from said attachment and for their costs. While the interpleas were undisposed of plaintiff filed an application for the sale of the property as perishable property, and on an ex parte hearing without notice to interpleaders a sale was ordered.

The two cases were consolidated, tried together to a jury, and the jury returned a verdict in favor of each of the interpleaders, fixing the amount of recovery of each. Judgment was rendered in favor of the interpleaders on the verdict, and after motion for new trial was overruled the cause was brought here for review on three propositions:

First. That the court erred in overruling motion of plaintiff for new trial.

Second. That the court erred in admitting incompetent, irrelevant, and immaterial evidence on the part of the defendants in error over the objection of the plaintiff in error.

Third. That the court erred in giving instruction No. 4, relative to the measure of damage and the amount thereof.

In support of the first proposition plaintiff in error contends that there was error in refusing to grant a new trial by reason of the error in the assessment of the amount of recovery, and that the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

The interpleaders offered evidence as to the value of the property. The plaintiff in error offered none, but contented itself with its theory that the interpleaders were not the owners of the property. The court is without authority to review that evidence further than to determine whether or not there is any competent evidence reasonably tending to support the verdicts of the jury. City of Pawhuska v. Button, 123 Okla. 61, 251 Pac. 1001.

The plaintiff in error neither demurred to the evidence of the interpleaders nor asked for an instructed verdict.

"Where plaintiff submits his case to the jury without demurring to the evidence or asking an instructed verdict, or otherwise legally attacking its sufficiency, the question whether there is any evidence reasonably tending to support the defense is not presented for review by plaintiff's motion for a new trial." Myers v. Hubbard et al., 80 Okla. 97, 194 Pac. 433.

There is competent evidence tending to support the verdict of the jury, and its sufficiency not having been attacked, the verdicts must stand.

The plaintiff in error discusses its second and third propositions together, and claims error of law and that the verdicts of the jury are contrary to law.

An examination of the evidence discloses that there was no evidence admitted over the objection of the plaintiff in error sufficient to warrant this court in reversing this cause. The only evidence over which there is any question is that with reference to the value of the property. The court permitted a witness to testify as to the market price of this kind of grain on the date the property was taken under attachment on October 13, 1924, and the highest market price thereof from the date of the attachment to the 25th day of February, 1925.

The trial was had on the 7th day of May, 1927. That evidence could not have been with reference to the rule of damage for conversion of personal property. It was undoubtedly offered and admitted under section 6009, C. O. S. 1921, which is as follows:

"In estimating damages, except as provided by the two following sections, the value of property to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing, in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase"

—as construed in Barse Live Stock Co. v. McKinster et al., 10 Okla. 708, 64 Pac. 14.

"In our Civil Code, under the article entitled 'Replevin,' it is provided, sec. 4063, Stat. 1893:

"'In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or for the recovery of possession, or for the value thereof, in case a delivery cannot be had, and of damages for the detention. If the property has been delivered to the plaintiff and the defendant claim the return thereof, judgment for the defendant may be for the return of the property or for the value thereof, in case a return cannot be had, and damages for the taking and withholding of same.'

"This section of the statute would in the case at bar entitle the defendants to a return of the property, or the value thereof in case a return cannot be had, and damages for the taking and withholding of same. In any case of replevin, where the property cannot be returned, there are two distinct elements of damages recoverable: First, the value of the property, and, second, the damages for the taking and detention thereof. It is only the first element of damages, viz., the value of the cattle, that is in controversy in this case. But it will be observed that the provision of the Civil Code quoted, supra, does not fix the time at which such value must be determined. Hence the inquiry is, to what time must the proof of value be directed and confined? This question is answered by section 2650, Stat. 1893, found under the title, 'Measure of Damages,' and which is as follows: "'In estimating damages * * * the value of property to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded, as would suffice, with reasonable diligence, for him to make such purchase.'

"The application of this rule to the case under consideration is not difficult. The defendants were the owners of the calves; they were deprived of possession by the plaintiff, and were so deprived at the time the cattle were taken under the writ of replevin. The right of the defendants to damages is founded upon this taking. The value of the animals to them and the value they are entitled to recover in this cause, is the price at which they might have bought other calves of the same age, kind and character, in the open market nearest to the place where the calves were taken from them and at such time after the taking as would with reasonable diligence have enabled them to make such purchases. The price for which similar calves could have been purchased in the market is a matter of proof, and what was a reasonable time after the breach of duty in which to enable the defendants with ordinary diligence to make such purchase, may also be shown by competent evidence, and the jury can determine these questions of fact on proper proof and under proper directions of the court"

—which practice was commended in Myers v. Hubbard et al., supra:

"In the case of Barse Live Stock Com. Co. v. McKinster, 10 Okla. 708, 64 Pac. 14, it was held that in estimating damages the value of the property to the owner thereof deprived of its possession is the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice with reasonable diligence for him to make such a purchase. This holding has been cited with approval in the cases of Robb v. Dobrinski, 14 Okla. 563, 569, 78 Pac. 101, 103; Leeper, Graves & Co. v. First National Bank of Hobart, 26 Okla. 707, 721, 110 Pac. 655, 660. See, also, Thomas v. First National Bank of Tecumseh, 32 Okla. 115, 121 Pac. 272; Sutherland on Damages (4th Ed.) sec. 1157; Cobbey on Replevin, secs. 888, 890.

"In Barse Live Stock Com. Co. v. McKinster, supra, the court said:

" 'It may be suggested that the defendants were not financially able to purchase other stock. But this cannot alter the rule. On this question we are content to quote the language of Mr. Justice Hunt, in City of Memphis v. Brown, 20 Wall. 304, wherein he said: '* * * This consideration can have no legitimate influence. A rule of law is based upon principle, upon sound considerations of justice and public policy, and as manifested by the proceedings and authorities. It is the same for all cases and conditions. None are so high as to be above its claims, none so low as to be beneath its protection. It will be a sad era in the history of any country when the application of a rule of law shall depend upon the wealth or the poverty of a party to a suit; upon his wealth, which would thus enable him to increase that wealth, or his poverty which would be thereby aggravated. * * *"

" 'The law presumes that immediately after the defendants were deprived of their property, they went into the market and bought similar property at the market value, to replace that which was taken from them, or, that if they did not do this, they could have done so, and thus saved themselves any loss other than the interest upon the capital invested, the reasonable expense incurred, and value of time consumed in making the purchase of such property.

" 'While it is true the plaintiff wrongfully deprived the defendants of the possession of their property, yet they took same under the process of the court and upon a claim of ownership. The law gave to the defendants the right to execute a bond and retain possession, but they elected to let the plaintiff take the property, and hence the rule of damages is not so rigorous as where one, ignoring the forms of law, wrongfully converts another's property to his own use.' "

—and in Cook v. First Nat. Bank of Duncan et al., 110 Okla. 111, 236 Pac. 883.

There was nothing in the pleadings to indicate any measure of damage, but in the opening statement of the interpleaders it was said that they would expect a verdict for the value of the property that was unlawfully taken. The plaintiff in error undoubtedly had the right to an election by interpleaders as to whether they would claim the value of the property at the time of the taking with interest or the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase. The record shows no request for such an election. Under the reasoning in Funk v. Hendricks, 24 Okla. 837, 105 Pac. 352, the interpleaders had the right to elect at the time the cause was submitted to the jury. In the case it was said:

"The statute to our minds fully contemplates that this election may be made at any time before the case is finally given to the jury. * * * While there is nothing in the record to indicate that the plaintiff made a formal election, to our mind the instruction of the court, being, in harmony with the pleadings and predicated upon ample evidence, was sufficient to constitute such election. The instruction seems to have been given by the court upon its own motion, and, as it was accepted by the plaintiff without objection, it constituted a sufficient election as to which measure of damages be claimed."

Instruction No. 4, complained of by plaintiff in error, was as follows:

"You are further instructed that, as it is admitted in the record, and the record so shows, that the property in question has been sold, you are further instructed that if you find for the interpleaders, George Hess and Mary A. Hess, then and in that event your verdict should be for the value of the property at the time of the attachment on the 13th day of October, 1924, plus interest thereon from said 13th day of October, 1924, at the rate of six (6%) per annum, and your verdict should be for that amount in favor of the interpleaders of the property at that time."

That instruction was excepted to by the plaintiff, but not by the interpleaders, and as far as the interpleaders are concerned, it must be considered as an election by them to rely upon that measure of the value of the property taken. The objection of the plaintiff in error to this testimony was that

it was incompetent, irrelevant, and immaterial. There was no objection on the ground that two measures of value were sought to be shown. There was no objection that it was not within the issues in the case. There was no objection that it was too remote. There was no requested instruction. The testimony was competent, relevant, and material, and there was no error in its admission. If there had been any error therein, it was cured by instruction No. 4. The jury found the value of the property, and under the provisions of section 5972, C. O. S. 1921, the interpleaders were entitled to interest on that value. In construing that section in City of Oklahoma City v. Hoke, 75 Okla. 211, 182 Pac. 692, this court said:

"In an action for damages for the destruction of crops caused by the maintenance of a dam which caused the lands of another to be flooded, the jury in fixing the amount of damages fixed the value of the property at the time of the damages, and interest from said date. Held not error."

There was no error either in the instruction or in the verdicts.

An examination of the briefs in this case discloses that there is but one question involved in the case, and that is a question as to the right of an interpleader in an attachment action to claim title to the property attached therein and recover the value of the property where the property had been sold prior to judgment as perishable property. The plaintiff contends that there may be a recovery of only the proceeds of the sale. The interpleaders contend that they may recover the value of the property wrongfully attached.

It appears that this court has never passed directly upon this question.

R. C. L., in discussing this question, says:

"For the purpose of enabling persons to protect their rights when they are in danger of being injuriously affected by attachment proceedings, statutes of a number of states permit what is termed as 'intervention.' This remedy was not known at common law, but seems to be a product of the civil law. It has its origin in this country in Louisiana, whence it was first carried to California, and up to the present time has been adopted principally by the middle and western states of the Union." 2 R. C. L., page 879.

"The standing of a person to file a petition in intervention is to be determined primarily from an examination of the statute which authorizes the practice. An examination of the cases discloses that the right to intervene is generally limited to the purposes expressly provided for by the statute, and to the persons to whom it is apparent that the act was intended to apply. Some of the enactments in the broadest terms secure the right of intervention to any person who has an interest in the matter in litigation or in the success of either of the parties, or an interest against both plaintiff and defendant. But as a rule the intervener is required to have an interest in the property seized by the writ of attachment, and this interest in some states must be a direct legal interest." 2 R. C. L. page 881.

"Generally speaking, one who files an intervening petition is confined to claiming the property in his own right, and showing fundamental invalidity to his own injury." 2 R. C. L. page 883.

"An intervener stands in the character of plaintiff before the court as to the nature of his title and the object of his demand, and is governed in his pleadings by the rules of practice which apply to plaintiffs in principal demands." 2 R. C. L. page 884.

Corpus Juris, vol. 6, page 405, reads:

"Where the claimant or intervener succeeds in establishing his title to the property attached, the judgment should be that the attachment be vacated and the property returned to the true owner, and the court should make such orders as are necessary to protect the right of the claimant.

"Where the property attached has been sold and the proceeds of the sale are in the hands of proper officer, judgment should be that claimant have and recover the proceeds arising from the sale of the goods by such officer, who should be ordered to pay the proceeds to claimant; and it is erroneous to enter judgment for value of the property against plaintiff in attachment."

This citation is relied upon by the plaintiff in error. The cases cited in support of this text are analyzed as follows:

Dodder et al. v. Mobley, 28 Okla. 334, 114 Pac. 714, is a case wherein the court held that it was the duty of the trial court to dissolve the attachment, order the property returned, and tax the plaintiff with the cost of the attachment and the cost of the interpleader, for the reason that the interpleader had a mortgage lien upon the property and the plaintiff had not paid the mortgage or deposited the amount with the county treasurer. There was no other issue in the case, and that case is no authority on the question here.

There are some ten citations from Missouri. In a late Missouri case, Citizens Trust Co. v. Elders et al., 212 Mo. App. 589,

259 S. W. 136, the Missouri statute on interpleader was under consideration, and the cited cases were reviewed. The Missouri statute is almost identical with our section 229, C. O. S. 1921, the only difference being that in our statute there is added after the word "affidavit," the words, "made by himself, agent or attorney."

The Missouri court said:

"In construing this statute and the rights of the interpleader under it, it has been held that the interplea is in the nature of a replevin suit ingrafted upon the attachment suit and that the interpleader must recover, if at all, upon the strength of his own title and must have the legal title to the property or the right to immediate possession. Gate City Nat. Bank v. Boyer, 161 Mo. App. 143, 142 S. W. 487; Brownwell & Wight Car Co. v. Barnard, 139 Mo. 142, 40 S. W. 762; Rice Stix Co. v. Sally, 176 Mo. 107, 119, 75 S. W. 398.

"It is also held that the interplea is a separate and distinct action from the attachment suit, and that the issues on the interplea must be tried before the issues between the original parties to the suit upon the attachment. Car Co. v. Barnard, 139 Mo. 142, 40 S. W. 762; Kahmke v. Weber, 187 Mo. App. 698, 701, 173 S. W. 76.

"It has been held that, since the interplea is considered as a replevin suit ingrafted upon the attachment proceeding, the interest of all the parties concerned may be ascertained and settled in the interplea proceeding. Drumm Flato Com. Co. v. Summers, 89 Mo. App. 300, 310; Dry Goods Co. v. Diment, 132 Mo. App. 616, 623; 111 S. W. 1196."

—and the conclusion was:

"When the jury finds that the interpleader is entitled to all the property and the property has been sold by order of the court, the property, of course, cannot be returned to the interpleader. In that case it is the duty of the jury to merely find, for or against the interpleader. If they find for him, all that they need do is to find that the interpleader was the owner, or if not the owner, that he was entitled to the possession of the property. Upon the return of a verdict of that kind, it then becomes the duty of the court to order the money for which the property sold, which stands in the place of the property, delivered to the interpleader. Hewson v. Tootle, 72 Mo. 632; Engine & Thresher Co. v. Glazier, 55 Mo. App. 95; State, to use, v. Fink, 57 Mo. App. 626; Hardware Co. v. Randell, 69 Mo. App. 342."

In Hill v. Gardner, Sheriff et al., 35 Wash. 529, 77 Pac. 808, it was said:

"Further complaint is made of the judgment in that it provides for the recovery of 6 per cent. interest per annum upon the amount of the judgment from the date of the affidavit made by appellant when she sought possession of the property. The judgment was entered more than a year after said date, and there was thus added to the value of the property more than $18 as interest. We believe no authority exists in this special proceeding for the recovery of interest. The statute does not so provide. It merely contemplates the return of the property or the payment of its value, and that is all that the sureties undertook to do. This judgment is against them as well as against appellant. The only theory upon which interest could be allowed would be that it is in the nature of compensation as damages for the detention of the property, but the statute does not provide for the adjustment of damages in this proceeding. We think it was error to include interest in the judgment which accrued prior to its date."

In Swift & Co. v. Guy, 3 Ind. T. 756, 49 S. W. 46, the question under consideration was whether or not the interpleader was entitled to recover the value of the goods. It was insisted that the question of ownership was the only issue. The Arkansas statute in force in the Indian Territory was set out as follows:

"'Sec. 356. Any person may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or of any attached debt, present his complaint, verified by oath, to the court disputing the validity of the attachment, or stating a claim to the property, or an interest in or lien on it under any other attachment or otherwise, and setting forth the facts upon which such claim is founded, and his claim shall be investigated'."

The court held that these sections must be construed in connection with other sections:

"'Sec. 5145. In actions for the recovery of specific personal property, the jury must assess the value of the property, as also the damages for the taking or detention, whenever, by their verdict, there will be a judgment for the recovery or return of the property.'

"'Sec. 5181. In an action to recover the possession of personal property, judgment for the plaintiff may be for the delivery of the property, or for the value thereof, in case a delivery cannot be had, and damages for the detention. Where the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for the return of the property, or its value, in case a return cannot be had, and damages for the taking and withholding of the property'"

—and that when so construed,

"If the attached property has been sold,

there is but one way to protect the rights of the claimant who may have established his claim to the property, and that is by directing the proceeds thereof to be paid to him. In this case, therefore, it was not error for the trial court to instruct the jury that, if they found for the interpleader, they would also find the reasonable market value of the goods attached at the time of the levy of the attachment."

This case went up on appeal (Swift & Co. v. Russell, 97 Fed. 443) and the Circuit Court of Appeals held that sections 5145 and 5181, supra, applied only to actions to recover personal property or its possession, and not to the facts in the case under consideration, for the reason that there the question was only the ownership of the property. The court said:

"It is a proceeding for a disposition of property or money in the custody of the court and not for the recovery of either from any person or party."

The court held that the extreme limit of relief in that sort of a proceeding was the property itself or its proceeds after it had been sold.

In Hughes Bros. Mfg. Co. v. Reagan, 1 Ind. T. 472, 69 S. W. 940, the Indian Territory court cited the Arkansas case, Fly v. Grieb's Admr., 62 Ark. 209, 35 S. W. 214, and held that the interpleader was entitled only to costs and the proceeds of the sale, and that if he was damaged, he would have to seek redress in another proceeding. That case also cited Swift & Co. v. Guy, supra, and the conclusion was that there could be no recovery for the value of the goods.

In Simmons Clothing Co. v. Davis, 58 S. W. 655, an opinion by the Indian Territory court, the proceeds had been turned over to the plaintiff prior to the interplea, and a plea in abatement was made for that reason. The court held that the plea in abatement would not lie. That case is cited and attention is particularly called to it, for therein was set out the Arkansas statute which we think was the basis of those decisions. That statute (Mansf. Dig. sec. 345) is as follows:

"If judgment is rendered in the action for the defendant, the attachment shall be discharged and the property attached, or its proceeds shall be returned to him."

Under that statute, a defendant in an attachment action could recover nothing more than the property or its proceeds, and those courts held that an interpleader in an action could recover no more than a defendant therein. That statute is identical

with the Oklahoma statute. section 5744, Comp. Laws of Oklahoma 1909, and had this cause arisen prior to May 16, 1913, we would be constrained to give weight to the rule cited in Corpus Juris and announced in the cases therein cited, but our statute was amended by the Revised Statutes of 1910, which took effect May 16, 1913. That amendment is carried forward in Compiled Statutes of 1921 as section 387. Our statute as amended reads as follows:

"If judgment be rendered in the action for the defendant, the attachment shall be discharged and the property attached, or its proceeds, shall be returned to him. **If the attachment or garnishment shall be discharged on motion prior to final judgment, the defendant may, upon proper supplemental answer, recover his damages, as in other cases for such wrongful attachment or garnishment.**" (Emphasis our own to show amendment.)

That amendment materially changed the remedy afforded by an attachment action. A defendant may now recover damages in an attachment action. True he may not recover damages until the attachment has been discharged, for the reason given in Nation v. Savely et al., 127 Okla. 117, 260 Pac. 32, as follows:

"There is good reason for a general rule that the attachment proceedings should be terminated in some manner before the defendant can commence an action for damages for wrongful attachment; for the reason that if the action is still pending, the plaintiff therein may show in that action that the attachment was not wrongful, and a judgment may be rendered to that effect, and he should not be called upon to show such fact in the second action until he has had this opportunity of showing it in the first."

But that does not apply to an interpleader who is not bound by any judgment against the defendant. The interpleader may proceed to recover his damages notwithstanding the attachment has not been discharged. The owner of the property attached may proceed in replevin or for conversion notwithstanding a judgment sustaining the attachment against the defendant. There is no reason why he should not interplead and establish the same rights in the attachment action. Neither the Arkansas, Missouri, nor Indian Territory statutes are similar, and the cases construing those statutes are not and cannot be in point in consideration of the question here.

In Selsor v. Arnbrecht, 57 Okla. 732, 157 Pac. 908, the court calls attention to the

amendment to section 387, C. O. S. 1921, and says:

"Section 4855, Rev. Laws 1910, became effective May 16, 1913, and it is by virtue of this section that a recovery can be had for wrongful attachment in the same proceeding. Prior to this section becoming effective, there was no statute in this state authorizing a recoupment for damages by the defendant for wrongful attachment in the same proceeding And in the absence of such a statute cross-actions of this nature cannot be maintained."

Shinn on Attachment, 1896, sec. 429, reads:

"Under an intervention statute, providing for the assessment of damages when the issues are found for the claimant, the court may, after finding the title to be in the claimant, receive evidence as to the value of goods, even though no formal issue of value is raised by the pleading."

And section 440, Id., reads:

."Costs and damages may be awarded to the claimant when he prevails in his intervention. This is usually the compensation for the wrong and injury done him, although damages are not specifically claimed in the petition. In Colorado, the damages are not recoverable, when the property has been sold under the attachment, is limited to the value of the property at the time of the levy, with interest to date. When the intervener fails to support his claim and his intervention is dismissed, costs occasioned by the intervention will be taxed against him."

After the amendment shown in section 387, supra, this court in Leasure v. Hughes, 72 Okla. 75, 178 Pac. 696, held that the defendant in an attachment proceeding, where the attachment had been dissolved, was entitled to recover damages. The court said:

"The defendant would be entitled to recover any reasonable and necessary expense incurred in procuring the dissolution of said attachments, including reasonable attorney's fees, and all damages that accrued to the merchandise seized and returned by the sheriff, and also any profits that he might have made in conducting said business if his store had not been closed and the goods had not been removed under the attachment. Wellington v. Spencer et al., 37 Okla. 461, 132 Pac. 675, 46 L. R. A. (N. S.) 469; Floyd v. Anderson, 36 Okla. 308, 128 Pac. 249, 43 L. R. A. (N. S.) 788, Ann. Cas. 1915A, 348."

Section 387, supra, by its plain terms and as construed in Scott v. Waples-Painter Co., 74 Okla. 52, 176 Pac. 754, provides that the defendant may file a motion to discharge the attachment as provided by section 394, supra, and after the attachment is discharged thereon the defendant may then file a supplemental answer and recover the damages sustained by the wrongful attachment.

The evident purpose in amending this section was to provide a speedy procedure by which the rights of the parties in an attachment action might be determined without the necessity of resorting to other litigation.

Construing this section in connection with section 229, supra, both of which were adopted in the Revised Laws of 1910, and took effect at the same time, they must be construed together to ascertain the legislative intent with reference to section 229, supra.

The rule announced in the cases cited by plaintiff is contrary to the construction placed upon our statutes by the decisions of this court.

Since Territorial days the right to interplead has existed without any limitation as to time or specification as to the stage of the proceedings in the case. Hockaday et al. v. Drye, 7 Okla. 288, 54 Pac. 475.

It was early announced that two interpleaders might try out their rights between each other in this proceeding. Miller et al. v. Campbell Com. Co. et al., 13 Okla. 75, 74 Pac. 507.

An interpleader was authorized to defend the attachment on behalf of the defendant where there was a failure to serve a summons upon the defendant. Ballew v. Young et al., 24 Okla. 182, 103 Pac. 623.

Ballew v. Young et al., supra, calls attention to the fact that this rule is contrary to that announced in many cases, including those from Arkansas.

These and many other announcements of our court are in direct conflict with the reasoning of Judge Sanborn in the case of Swift & Co. v. Russell, 97 Fed. 443.

An examination of the cases reported shows that they all involved a construction of the various state statutes. As was said in Hendrickson v. Brown, 11 Okla. 41, 65 Pac. 935:

"Each state has its own peculiar provisions on the subject, and the decisions deal with these various statutes. All have some provision in common, but there is enough variance in the statutes of the several states

to render the adjudications of little value as precedents."

In addition to section 229, supra, providing for an interpleader, we have section 394, C. O. S. 1921, providing for dissolution on motion, as follows:

"The defendant may, at any time before judgment, upon reasonable notice to the plaintiff, move to discharge an attachment, as to the whole or part of the property attached."

In considering the effect of section 394, supra, Mr. Justice Turner, speaking for the court, in Sparks v. City National Bank, et al., 21 Okla. 827, 97 Pac. 575, said:

"We heartily condemn the practice pursued in this case of permitting plaintiff in error to move to dissolve the attachment, instead of requiring her to interplead for the attached property; but in view of a long line of Kansas cases recognizing the practice, we will not disturb it. With the practice thus established, and which we follow reluctantly, there can be no question as to the right of plaintiff in error to file her motion to dissolve the attachment upon the ground that the lots levied upon were her property."

In Millus v. Lowrey Bros., 63 Okla. 261, 164 Pac. 663, it was said:

"It appears that under section 4426, Stat. 1893 (section 5310, Rev. Laws 1910), one who is not technically a party to an action, but who has an interest in or is affected by the same, as, for instance, one who is interested as owner or otherwise in having the property discharged from the attachment, may move for such discharge without subjecting his claim of interest to the danger of a binding adjudication against him on such motion, although the court has a wide discretion in determining such motion, and should overrule the same if there is any substantial question as to the mover's interest; and the only thing determined as to the mover's interest is the interlocutory question as to whether the same is claimed and is admitted or not seriously questioned in such action, although the decision may be final as to other grounds of the motion (Sparks v. City National Bank of Lawton, et al., 21 Okla. 827, 97 Pac. 575; Shelby et al. v. Ziegler, 22 Okla. 799, 98 Pac. 989; Crow v. White Wing, 3 Kan. 276 [270]; Harrison & Willis v. Andrews, 18 Kan. 535; Long v. Murphy et al., 27 Kan. 375); but, instead of such an anomalous motion to discharge under the section cited, it appears that the interpleader, evidently relying upon section 3918, Stat. 1893 (section 4701, Rev. Laws 1910), without any direct attack upon the attachment proceedings, had, prior

to the levy upon this personal property, merely alleged title, and literally construing her interplea, claimed the right to the immediate possession of the property, somewhat as if she were proceeding in replevin (Ranney-Alton Mercantile Co. v. Hanes & Johnson, 9 Okla. 471, 60 Pac. 284), so that when the plaintiff filed his general denial thereto, an issue was made, to be tried as in replevin, as to the existence of her alleged right to the immediate possession of this property. Ranney-Alton Mercantile Co. v. Hanes & Johnson, supra; Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398; Spooner v. Ross, 24 Mo. App. 599; Stadden Grocery Co. v. Lusk, 95 Mo. App. 261, 68 S. W. 587; State ex rel. John Reeves v. Barker, 26 Mo. App. 487; Brownwell & Wright Car Co. v. Barnard, 139 Mo. 142, 40 S. W. 762."

These decisions clearly show that our court has made a distinction between the relief to be afforded under sections 229 and 394, supra, and that both of these provisions are open to an owner of property attached as the property of another.

If the contention of plaintiff were sustained, there would be little if any difference in the relief to be afforded under the provisions of the two sections. We cannot agree that there was a legislative intent that section 229, supra, should be no broader than section 394, supra. We prefer to hold that section 394, supra, limits the recovery to a return of the property wrongfully attached, or its proceeds, in case of sale, and that section 229, supra, provides a procedure for a determination of the rights of the parties, including a recovery of the property or its value where it has been sold, together with damages and costs.

This court has distinctly stated that it favored a proceeding under section 229, supra, for reasons which appear to us to be valid.

In Geck et al. v. Security State Bank et al., 133 Okla. 67, 271 Pac. 152, there was an attachment and a garnishment proceeding. Plaintiff in error filed her interplea claiming the property attached. No trial of that issue was had, but judgment was rendered on the garnishment issue. The court said:

"She had already filed the only pleading required of her by law, and the one offered her by statute as an adequate remedy for the protection of her claim. She had a right to expect a trial upon this pleading and the issue formed thereby."

—and held:

"The judgment of the trial court, canceling the conveyance of these lots from the R. C. Geck Lumber Company to Nellie R. Geck, is reversed, and the cause remanded, for a trial upon the issues raised by the interplea of Nellie R. Geck."

This is sufficient to show that an interplea under section 229, supra, is the procedure favored by this court.

What is the nature of this proceeding as determined by this court?

In Ranney-Alton Merc. Co. v. Hanes et al., 9 Okla. 471, 60 Pac. 284, there was a suit to recover money judgment on an account and an attachment of property. There was an interplea and a claim for the goods, or in default of the return thereof, the value of the goods and for costs. The goods were sold prior to judgment and the money paid into court. The defendant defaulted and judgment was rendered in favor of the plaintiff and sustaining the attachment. Issues were thereafter made up on the interplea and judgment was for the interpleader. On appeal it was alleged as error that the jury returned a money verdict instead of a verdict for the property. The territorial court held that this was not reversible error. In construing section 229, supra, that court said:

"This action is a proceeding in attachment, and while, by the interpleader, the defendant in error claims the right of the possession of the property, and while it is somewhat in the nature of a replevin action, we do not think that the verdict in this case should be the same as in an action in replevin.

"While it is true that the law provides that the verdict may be for the return of the property, or for a judgment for the value of the property where the same cannot be returned, we do not think that the law ever intended that the jury should return a verdict commanding a certain act to be done which they at the time knew was impossible. In this case the property described in the petition which was in litigation had, by an order of the court, granted on the application of the plaintiff in error, been sold, and the proceeds converted into money, the same being brought into court. This action of the court rendered it impossible for the specific property to be returned, and a verdict of the jury, ordering such return, would have been entirely useless. This cause was tried by both sides on the theory that whoever would recover in the case should have not the specific property, but the proceeds thereof.

"Now, when that part of the verdict of the jury requiring the return of the specific property had been rendered impossible by the act of the plaintiff in error, and over the objection of the defendant in error, the plaintiff in error should, in equity and good conscience, be estopped from asking and urging this as a cause for reversal."

In Millus v. Lowrey Bros., supra, this court held that the procedure under section 229, supra, was such that judgment therein could be reviewed only after motion for new trial.

In Ward v. Feldman, 122 Okla. 175, 253 Pac. 52, the interpleader had given a forthcoming bond. The court said:

"The plaintiff in error having filed an interplea in which he claimed the property, the fact that he executed and delivered a forthcoming bond did not estop him from denying that the property belonged to the defendants."

In Worley, Sheriff, et al. v. Mundell, 123 Okla. 237, 253 Pac. 42, the court said:

"In the case at bar plaintiff knew that the attachment was levied on the oil and gas lease which she had made to her brother, J. F. Trimmer, and she knew this long before the case was tried in the district court of Caddo county, and she had ample time in which to file and prosecute an interplea under section 229, C. S. 1921, and have all her rights in the property attached adjudicated. It cannot be said that this remedy was merely cumulative, it was sufficient for all purposes, and it must be held in this case that she had an adequate remedy at law and is not entitled to equitable relief."

As thus defined and construed, the interplea is something more than a preliminary or "cumulative" proceeding. It is "sufficient for all purposes." It is "an adequate remedy at law." It is "somewhat in the nature of a replevin action." It is a proceeding in which an owner of property may "have all her rights in the property attached adjudicated."

Section 178, C. O. S. 1921, is as follows:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

This provides for "a civil action." Under the construction placed on section 229, supra, by this court the issue made on the interplea constitutes a civil action, from which no appeal will lie without motion for new trial.

Under section 218, C. O. S. 1921:

"All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

—and under section 219, C. O. S. 1921:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

Section 220, C. O. S. 1921, is as follows:

"Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition."

These three sections contemplate that all the parties having any interest in the controversy should be brought before the court, and under section 224, C. O. S. 1921:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in" —the court must order any person having an interest in the property brought in. Simpson et al. v. Hillis, 30 Okla. 561, 120 Pac. 572. Under section 229, supra, the person claiming the property may come in and assert his rights as against both the plaintiff and the defendant and other claimants. On such interpleader costs are adjudged as in ordinary cases. Section 230, C. O. S. 1921.

To give section 229, supra, the construction sought by plaintiff in error would be to say that the owner of the property may interplead and recover the property and costs and nothing else,—all of which he could do under section 394, supra,—and that after the property has been sold he may recover only the proceeds of the sale. The sale may have taken place, as in the instant case, sometime after the levying of the attachment, and there may have been a material depreciation in the goods attached or a marked decline in the value of the property after the attachment and before the sale. For this court to announce such a rule would be to defeat the purpose of our statutes and to compel those whose property has been attached on a claim against one who is not the owner of the property to refrain from taking advantage of this statute. No one wants to litigate his rights twice. Under such a construction no one could afford to avail himself of section 229, supra, for the reason that he would have to institute other proceedings to recover for his injury. If an interpleader may not recover the value of the property, then he would have nothing to gain by interpleading in a proceeding where the property had been or might be sold pendente lite. The owner might interplead and claim his property. The court might order a sale thereof. The sale might be for an insufficient sum. The interpleader would then be forced to accept the proceeds of the sale or dismiss his interplea at his cost. Such a construction would create additional actions, while the policy of the court is to prevent the necessity of additional actions.

This court has repeatedly said that advantage of this statute should be taken by owners of property wrongfully attached. Certainly it cannot be said that the Legislature intended that the owner of property unlawfully attached should be required to bring two actions in order to recover that which was wrongfully taken from him and the damage sustained by the wrongful taking.

In Nation v. Savely et al., supra, the court said:

"The common law declares that for every injury there is a remedy, and in this state and elsewhere, where the English law obtains as a foundation of jurisprudence, it may be safely said that there are but few, if any wrongs for which the law does not provide a remedy. However, in this state there is no necessity for relying upon the broad principles of common law. The Constitution makes ample provision for relief. Section 6, art. 2. The language of the Constitution in this connection is as follows: 'The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property or reputation. * * *'" The provision is self-executing.'

We must conclude that the legislative intent expressed in section 229, supra, was to afford the owner of property taken in attachment on a claim against another, a speedy and adequate procedure by which he could recover his property, or if it had been sold, the value thereof and damages "without unnecessary delay."

The interplea at the time it was filed was sufficient, but after the sale there should have been an amendment of the interplea claiming the value of the property. No amendment was made, but the plaintiff was

charged with knowledge of the fact that the property had been sold. The trial of the issues made on the interplea was evidently as to the ownership and value of the property. It was so announced in the opening statement of the interpleader. No request was made for a continuance. No claim of surprise was made. There was no objection to continuing with the trial. Plaintiff proceeded on its theory that the property belonged to the defendant. There can be no valid contention now on a matter not contended for at the trial.

The issue in this matter was the ownership of the property. The property had been sold after interplea. By that sale, made on the application of the plaintiff, the issue was not changed. It remainded the same. The trial court knew that a return of the property could not be made. He submitted by a proper instruction the value of the property, in lieu of the property itself.

That issue was properly submitted to a jury; there was no error in instruction No. 4; the jury heard the evidence, which was sufficient to support the verdict, and the judgment of the trial court rendered on the verdict is affirmed.

LESTER, V. C. J., and HEFNER, CULLISON, and SWINDALL, JJ., concur.

MASON, C. J., and HUNT, CLARK, and RILEY, JJ., absent.